ANN ARBOR SAVINGS BANK v. SOPHIA WEBB, NANCY M. BEEBE, ALLAN SHELDEN AND MARY J. BEUK.

SOPHIA WEBB v. NANCY M. BEEBE, ALLAN SHELDEN, MARY J. BEUK AND ANN ARBOR SAVINGS BANK.

*Merger—Intent.*

1. A mortgagee's equitable title is merged in the legal title, if he acquires it, unless he intends otherwise or unless his acceptance of the legal title is brought about by fraud or deceit. And his intent is a question of fact.

2. A woman mortgaged land to her mother, and afterwards deeded it to a bank to secure loans made by the latter to her son. In order to obtain a first lien for the bank and get rid of the prior lien held by the mother the daughter and the bank gave simultaneous warranty deeds to the mother, the bank at the same time taking from her her personal note and mortgage to secure the debt to it. The mother did not know that the effect of this, if so intended, would be to merge her equitable title and destroy her prior lien, and was left to think that it would not affect such lien. She had no counsel, and the only lawyer who took part in the transaction acted in the bank's interest whether employed by it or not. *Held,* that equity would not permit

the merger, and that if the bank sought to avoid the prior lien it should have required the mother, in giving her mortgage to it, to discharge the former mortgage.

Appeal from Livingston. (Newton, J.) Jan. 30.—Apl. 15.

FORECLOSURE bill and cross-bill. The Bank appeals. Affirmed.

*Sawyer & Knowlton* for the Bank.

*Luke S. Montague* for Sophia Webb. There is no merger where it is not intended : *Tower v. Divine* 37 Mich. 443 ; *Dutton v. Ives* 5 Mich. 520 ; *Snyder v. Snyder* 6 Mich. 470 ; *Cooper v. Bigly* 13 Mich. 463 ; *Purdy v. Huntington* 1 Am. R. 533 ; 1 Hilliard on Mort. 524 ; *Williams v. Thorn* 11 Paige 459 ; if a man without any other consideration than an erroneous opinion respecting his legal rights release a right, pay money or undertake to do an act, he should be held entitled to relief as if he had acted under a mistake of fact, and for the same reason, namely, that the contract was not such as the parties, or one of them at least, contemplated : *Underwood v. Brockman* 4 Dana 309 ; *Ray v. Bank of Kentucky* 3 B. Mon. 510 ; *Lawrence v. Beaubien* 2 Bailey 623 ; *Hopkins v. Mazyck* 1 Hill's Ch. 242 ; *Northrop v. Graves* 19 Conn. 548 ; *Culbreath v. Culbreath* 7 Ga. 64 ; *Lammott v. Bowly* 6 Harr. & J. 500 ; *McNaughten v. Partridge* 11 Ohio 223 ; *Evants v. Strode's Adm.* 11 Ohio 480 ; *Drew v. Clarke* Cooke (Tenn.) 373 ; *Hunt v. Rousmanier* 8 Wh. 212 ; 1 Story Eq. Jur. § 138 ; but where there is active fraud, imposition and misrepresentation used in procuring a mortgage, courts will relieve in matters of law and fact : *Storrs v. Barker* 10 Am. Dec. 327 ; *Ladd v. Rice* 57 N. H. 374 ; *Brown v. Rice* 26 Grat. 467 ; *Hardigree v. Mitchum* 51 Ala. 151 ; *Goodenow v. Ewer* 16 Cal. 461 ; *Brown v. Armistead* 6 Rand. 594 ; *Whelen's Appeal* 70 Penn. St. 410 ; 1 Story Eq. Jur. §§ 185-206 ; *Trigg v. Read* 42 Am. Dec. 467, notes ; *Sparks v. White* 7 Humph. 90 ; *Crosier v. Acer* 7 Paige 137 ; *Arthur v. Arthur* 10 Barb. 9 ; *Gilbert v. Gilbert* 9 Barb. 532 ; *Black v. Ward* 15 Am. Dec. 182, notes ; *Griffith v. Townley* 69 Mo. 13.

CHAMPLIN, J.    In April, 1877, Freeman Webb, then residing at Putnam in the county of Livingston in this State, was the owner in fee of the southeast quarter of section 8 ; also

the southwest quarter of the northeast quarter of section 8 ; the southwest quarter of the northeast quarter, and the north half of the northeast quarter of the northeast quarter of section 17,—all in the county of Livingston, State of Michigan. Being in failing health, and desiring to make suitable provision for his wife out of his property, and to make disposition of his real estate to his two children, who were daughters and at that time married, on the 19th day of April, 1877, he, together with his wife, Sophia Webb, executed a warranty deed of the premises above described to their two daughters, Nancy M. Beebe and Eliza Crofoot, which deed contained the following stipulations :  " This deed is to take effect upon the death of Freeman Webb, and there is no title or possession until after the death of the said Freeman Webb. Reserving the use of one-half of the house and furniture." This deed was acknowledged on the 20th day of April, 1877, and on the same day and as part of the same transaction Nancy M. Beebe and Eliza Crofoot executed a mortgage to Sophia Webb, their mother, covering the same lands, and conditioned to pay Sophia Webb " one thousand dollars in the following manner, to wit:   Five hundred dollars on the first day of July, and five hundred dollars on the first day of January, of each and every year during the life-time of the party of the second part."   It also contained the following stipulation :   " It is agreed and understood between the parties that the payments upon this mortgage are to become due after the decease of the said Freeman Webb."

In May following the making of these instruments, Freeman Webb died.   In March, 1878, the daughters desired to partition the land held by them as tenants-in-common, and agreed between themselves as to the manner it should be done.   Eliza conveyed by quitclaim deed to Nancy the west half of the southeast quarter, the east half of the southeast quarter, and the southwest quarter of the northeast quarter, of section 8, and the north half of the northwest quarter of the northeast quarter of section 17, all in township 1 north, range four east.   Nancy conveyed to Eliza, by quitclaim deed, the south half of the northeast quarter of the northeast

quarter, the north part of the east half of the southwest quarter, the north half of the northeast quarter of the northeast quarter, and the east half of the northwest quarter, of section 17 ; the north half of the northwest quarter, the north half of the northeast quarter, the southwest quarter of the northeast quarter, and the northeast quarter of the northeast quarter of the northwest quarter, of section 16, town and range aforesaid. Having divided the real estate, the daughters desired to divide the liability and incumbrance running to their mother ; more especially, as will be seen, as the larger part of the incumbered real estate fell to the share of Nancy M. Beebe on the division of real estate, which real estate embraced other lands than such as were included in the deed to them. Consequently, by mutual arrangement, and on the same day of the quitclaim deeds, each daughter assumed one-half of the liability to their mother, and made notes and mortgages to secure the same. Those of Nancy M. Beebe bear date the 12th day of March, 1878.

The mortgage covers the west half of the southeast quarter of section 8, and is conditioned to pay or cause to be paid to Sophia Webb $250 on the first day of July, and $250 on the first day of January, each and every year from the date thereof during the whole natural life of Sophia Webb, according to a promissory note of even date. This mortgage was recorded April 2, 1878. On the 16th of March, 1878, Sophia Webb executed a discharge of the joint mortgage of Nancy M. Beebe and Eliza Crofoot to her, which discharge was recorded on the 29th of April, 1878.

In 1881 Nancy M. Beebe commenced to hire money from the Ann Arbor Savings Bank, upon her son's indorsement, without other security, for the purpose of aiding her son, who was engaged in business. The amount she borrowed from time to time soon ran up to about $8000; and of her own voluntary act, unsolicited by the bank, on the 5th day of August, 1881, the defendant Nancy M. Beebe, to secure payment thereof on that day transferred all the lands described in the said bill of complaint, by full-covenant warranty deed, to Charles E. Hiscock, who was and still is

cashier of the said complainant bank. This deed was recorded in the register's office, in Liber 76 of Deeds, at page 386, on the 10th day of August, 1881. Said Hiscock, at the time of making and delivery of the deed last aforesaid, gave back to said defendant Beebe a deed of defeasance, which deed of defeasance was not recorded: On the 2d day of February, 1882, Allan Shelden, claiming that the said defendant Beebe was indebted to him, defendant Shelden, on that day commenced a suit in the circuit court for the county of Livingston against the defendant Beebe, to recover the amount claimed due as aforesaid, by attachment; and on that day the sheriff of said county levied said attachment upon the lands described in said bill of complaint, and other lands. No judgment has been rendered in said attachment suit. On the 18th day of February, 1882, said Nancy M. Beebe executed and delivered a warranty deed to defendant Webb of all the lands aforesaid. This deed was recorded in said register's office, in Liber 76 of Deeds, page 577, on the 25th day of February, 1882. On the 18th day of February, 1882, said Charles E. Hiscock also deeded said lands to the said defendant Webb by warranty deed, but this deed was not acknowledged until the 24th day of February, 1882, and was recorded in Liber 76 of Deeds, page 578, on the 25th day of February, 1882. On the 18th day of February, 1882, said defendant Sophia Webb made, executed, acknowledged and delivered to said Ann Arbor Savings Bank the note and mortgage mentioned in the original bill of complaint in the original suit, and for the foreclosure of which mortgage the said original suit was brought. The said note and mortgage last aforesaid was given to secure to the Ann Arbor Savings Bank, aforesaid, the debt originally due from the said Nancy M. Beebe to the Ann Arbor Savings Bank. Nothing has ever been paid upon said last-mentioned note and mortgage, and the whole amount thereof is now due.

The bill of complaint in this case is filed to foreclose the last-named mortgage. The defendant Sophia Webb answered, admitting the execution of the mortgage, and also setting up her own mortgage executed by Nancy M. Beebe as an exist-

ing lien, averring that the deeds from Nancy M. Beebe and from Charles E. Hiscock to her were given without her solicitation, and without consideration from her; that she is a woman sixty-seven years of age, unused to business, and that she was told by the agent of complainant, when she executed the mortgage to complainant, that it would not affect her right under said mortgage from Nancy M. Beebe to her; that she would not have executed it if she had understood or believed that it would affect her rights in the said premises under her mortgage; and that the conveyance to her and procuring her to execute said mortgage to complainant was a fraud upon her rights, and that such mortgage to complainant, under the facts, is in equity subject to her mortgage from Nancy M. Beebe. And she filed her cross-bill setting up the facts alleged in her answer, and praying for a decree declaring the mortgage of complainant subsequent and subject to her said mortgage, and for a foreclosure of the same.

The complainant, the Ann Arbor Savings Bank, answered the cross-bill, setting out its dealings with defendant Beebe; averring that she had engaged to give it the first lien upon the property, to secure her debt to them, and an agreement for an extension of time on condition that it should have the first lien on the property covered by the Hiscock deed, which included the premises covered by the mortgage of Mrs. Webb; that it was agreed, in order to give such first lien, that Mrs. Beebe and Mr. Hiscock should deed to Mrs. Webb, and she should execute her note to the bank, indorsed by Mrs. Beebe, and secure the same by a mortgage on the property conveyed to her; that Mrs. Beebe represented that her mother would be willing to carry out any agreement she might make with the bank, and she would get her mother to execute the note and mortgage; and it denies that any agent of the bank made any representations, fraudulent or otherwise, to Mrs. Webb at the time she signed the mortgage, and claims that its mortgage is entitled to priority over that of Mrs. Webb. Proofs were taken in open court, and decrees rendered in the original and cross-suits in accordance with the relief prayed for in the cross-suit.

The main question in controversy is whether, by virtue of the deeds executed by Mrs. Beebe and by Mr. Hiscock to Mrs. Webb, her mortgage became merged in the legal title, and in consequence the mortgage given by her to complainant in the original bill became the first lien upon the premises covered by her mortgage. It did not merge (1) if she was induced to accept the legal title and execute a mortgage by any false representation, fraud or deceit practiced upon her to obtain her signature to the mortgage; or (2) if it was not her intention that her mortgage should become merged in the legal title. In either case the question depends upon her intention, actual or presumed. It is a question of fact, and must be determined by the evidence in the case. It is a general rule that when the legal and equitable titles become united, so that the owner has the whole title, the mortgage is merged by the unity of possession. But if the owner has an interest in keeping the titles distinct, there is no merger.

The testimony shows that on the 18th day of February, 1882, Mrs. Beebe had a conference with the bank officials and its attorney at the bank, in the city of Ann Arbor. At that time the situation of affairs was this : Mrs. Beebe owed the bank about $8000. As security for this indebtedness Mr. C. E. Hiscock held a deed, absolute in form, executed by Mrs. Beebe, by which she conveyed to him all her real estate, amounting to two hundred acres of land, eighty acres of which was subject to the mortgage of Mrs. Webb. The bank officials desired to obtain the first lien upon this eighty acres; in short, to get rid of the mortgage to Mrs. Webb. To accomplish this they proposed that Mrs. Beebe should give a warranty deed to Mrs. Webb, and also Mr. Hiscock should give to her a warranty deed; Mrs. Webb should then make her note to the bank, indorsed by Mrs. Beebe, and should secure the payment of the note by a mortgage to the bank upon the two hundred acres of land, payable in a year. To this proposition Mrs. Beebe assented, although she swears that she did not understand that the arrangement was to affect her mother's mortgage. The papers were prepared by the officers of the bank and its attorney. Mrs. Beebe executed

the deed to her mother, and left it with Mr. Hiscock. Mr. Hiscock signed, but did not acknowledge, the deed to Mrs. Webb that day, and it was not acknowledged until after he received the note and mortgage executed by Mrs. Webb. The note and mortgage for Mrs. Webb to execute were also prepared.

It is proper here to pause and consider who were the parties to this proposition. On the one side were the bank and its debtor, Mrs. Beebe; and on the other was Mrs. Webb; the object being to get rid of Mrs. Webb's mortgage, so as to give the bank a prior lien. The object sought to be accomplished and the interests to be affected thereby, by the bank and Mrs. Beebe, were identical. But Mrs. Webb, the other party to be affected, was not present. She knew nothing of what it was proposed to do. The officers of the bank testify that Mrs. Beebe promised and undertook to obtain the note and mortgage from her mother. There was an attorney by the name of J. H. Morris, who was out and in the bank during the interview, who had previously acted as the attorney of Mrs. Beebe in some of her matters, but he had never acted as attorney for Mrs. Webb. The note and mortgage prepared for Mrs. Webb to execute were placed in his possession. He took them and went with Mrs. Beebe to Pinckney, where she resided, on the evening of February 18th. The next day was Sunday. On that day he and Mrs. Beebe went to the residence occupied by Mrs. Webb, which was on the premises covered by her mortgage, a distance of about two and a half miles from Pinckney. There Mrs. Beebe told her mother, or asked her, rather, if she was willing that the farm should be deeded to her, and she give a mortgage to the bank, and she replied that she was willing, and she was requested to come to Pinckney the next morning to execute the papers. Nothing was said about her mortgage, or the effect it would have upon her mortgage security. She went to Pinckney the next morning and found Mr. Morris waiting and in haste to be taken to Dexter to catch the train for Ann Arbor. The note and mortgage were laid upon the table before Mrs. Webb without being read.

Mr. Morris told her where to sign. When she took the pen she inquired whether that would affect her rights—her mortgage; and she testifies that Mr. Morris answered, "No;" and she says she signed it in view of this statement, that it would not affect her mortgage, and that she did not suppose that it would. Mr. Morris says such inquiry was made by Mrs. Webb at the time of signing the mortgage, but he don't remember that he made any reply, but that Mrs. Beebe answered that it would not affect her mortgage. The mortgage and note thus executed was by Mr. Morris then taken to Ann Arbor and delivered to Mr. Hiscock, and then he acknowledged the execution of the deed to Mrs. Webb, and placed the deeds and mortgage upon record.

If Mrs. Beebe and Mr. Morris knew the purpose of making the deeds and mortgage was to obtain for the bank priority over Mrs. Webb's mortgage,—and it is plain that the transaction had no other signification,—and if it is allowed to stand, then they perpetrated a fraud upon Mrs. Webb, who was there without a legal adviser, in obtaining her signature to the mortgage in the manner they did. Grant that Mrs. Beebe was ignorant of the effect upon her mother's mortgage interest by the conveyances to Mrs. Webb, yet Mr. Morris must certainly have been aware of the law in that respect, and should have advised her correctly relative to her rights in the premises.

But the complainants in the original bill say the bank is not responsible for the statements of Mrs. Beebe or of Mr. Morris; that they were not their agents. But it is evident that they acted for somebody in getting Mrs. Webb's signature, and it is certain they did not act for Mrs. Webb, nor in her interest. Under all the circumstances, the bank must be held responsible for any misrepresentations which were made to Mrs. Webb in procuring her signature to the mortgage. The indirect manner in which it was proposed by the bank officials to obtain this priority, raises a strong presumption that they did not expect that Mrs. Webb would be willing to discharge her mortgage, or make it subject to the indebtedness of her daughter to the bank, if informed of that pro-

position in direct terms. Few persons unlearned in the law are acquainted with the doctrine or effect of merger. The course pursued to obtain priority was well calculated, if it was not designed, to entrap a person in the situation in which Mrs. Webb was placed. But aside from these considerations the testimony is positive and convincing that there was no intention on the part of Mrs. Webb that there should be a merger of her mortgage interest with the legal title. It was not for her interest that it should be merged; and in such case, upon well-recognized principles, equity will preserve the lesser estate by preventing a merger. If it was the design of the bank that the mortgage of Mrs. Webb should become swallowed up and lost in the legal title, they should have required her note and mortgage, with a proper discharge thereof, to accompany the mortgage to them, and thus save all question. The complainants in the original bill have shown no equities superior to those of Mrs. Webb. The decrees of the court below are in accord with the views herein expressed, and are

Affirmed, with costs.

The other Justices concurred.