116     15
s74ᴺᵂ 189
133    ²206

## QUICK *v.* RAYMOND.

1. MORTGAGES — FORECLOSURE — SATISFACTION OF DECREE—DEFICIENCY.

   At the request of the administrator of a mortgagor's estate, the mortgagee, who had secured a decree in foreclosure proceedings, consented to postpone the sale as long as the administrator should keep the yearly interest paid and take good care of the premises. Two years later, the administrator found himself unable to pay the interest, and an arrangement was made whereby the heirs of the mortgagor quitclaimed the premises to the mortgagee, and the latter leased the same to the administrator under an agreement that the estate should be entitled to a deed upon payment of the amount due under the decree, with interest, taxes, and insurance. A year later, the administrator, being unable to make the payment, voluntarily surrendered possession to the mortgagee. Upon the final account of the administrator, the amounts paid as interest money were disallowed, and these payments were thereafter recovered back in an action instituted on behalf of the estate. Subsequently the heirs of the mortgagor filed a bill in equity to declare the foreclosure decree satisfied by reason of their quitclaim to the mortgagee. *Held*, that complainants' contention was inequitable; that the mortgagee, having been obliged to refund the interest money, the payment of which by the administrator was an essential part of the transaction, should be permitted to pursue his remedy under his decree, and to enforce against the estate a claim for a deficiency arising after sale.

2. SAME—MERGER.

   It is the rule in equity that a mortgage is not merged by a purchase by the mortgagee of the equity of redemption where the interest of the mortgagee requires the titles to be kept separate.

Appeal from Jackson; Peck, J.   Submitted February 4, 1898.   Decided February 16, 1898.

Bill by Lucy Quick and others against Jane E. Raymond, executrix of the last will and testament of Mahlon

H. Raymond, deceased, to declare a foreclosure decree satisfied, and to enjoin further proceedings thereunder. From a decree dismissing the bill, complainants appeal. Affirmed.

*Grove H. Wolcott,* for complainants.

*Melville McGee (Charles A. Blair,* of counsel), for defendant.

LONG, J. The following statement of facts, set out in the brief of defendant's counsel, is substantially correct:

"Isaac C. Quick, in his lifetime, gave to Dr. Raymond his promissory note for $4,000, payable in two years, with interest at 6 per cent. To secure the payment thereof, Quick and his wife gave Raymond a mortgage upon certain lands. Afterwards Quick died, and, as nothing had been paid on the note and mortgage, Raymond commenced a foreclosure in chancery. The bill for the foreclosure of the mortgage was taken as confessed by all the defendants, and on or about the 17th of January, 1893, a decree was entered for the sale of the mortgaged premises at any time after the 30th of January, 1893. The amount found to be due on the 5th of January, 1893, was $4,711.35. No question is made as to the proceedings, or the amount found to be due.

"At the request of Augustus O. Quick (the then administrator of the estate of Isaac C. Quick), Raymond consented to postpone the sale under the decree, only upon the condition, however, that Quick should pay the interest and costs, and secure the payment of the next year's interest by a chattel mortgage on all the wheat and rye then growing upon the place; and, in order that Raymond should not be delayed in getting possession of the place in case Quick failed to pay the interest and costs by the 1st of April, 1893, Raymond required that the complainants should execute a quitclaim deed of the premises, and leave it in one McGee's hands, to be delivered to him if they failed to pay. The interest and costs were paid April 1, 1893, and McGee delivered the quitclaim deed back to Quick, and he burned it. In making this arrangement, Quick acted in good faith, believing that by so doing he would be able to pay all the debts of the estate, and save the farm for the heirs. Raymond, on his part, in postpon-

ing making sale of the premises and allowing Quick further time, acted in good faith, and consented to postpone the sale as long as Quick kept the yearly interest on $4,000 paid, and did not allow the farm to run down.

"Raymond allowed the Quicks to go on for nearly two years longer, and until January 25, 1895. Then, Quick being unable to pay the yearly interest on the $4,000, and at Quick's request, they executed and delivered to Dr. Raymond their quitclaim deed. Quick was still confident that he could pay Raymond the amount of the decree and interest, and Raymond agreed to lease him the place for another year, and if Quick would, during the year, pay or secure to be paid the amount of the decree, with inter-' est, taxes, and insurance, then Raymond would deed the place back. Quick had possession of the place until the spring of 1896, when, being unable to pay Raymond, he voluntarily left the place, and gave up the possession to him. Before the lease expired, and in December, 1895, Raymond told Quick that he would take $4,100, and deed back the farm, and give him until the following March to pay it; thus throwing off several hundred dollars from the amount actually due him.

" Some time in the spring or early summer of 1896, it seems that Mr. Wolcott, complainants' solicitor, was employed by Quick or by the creditors of the Quick estate. He prepared Quick's final account as administrator of the estate of Isaac C. Quick, deceased, appeared before the judge of probate on the hearing, and secured the disallowance of about $1,200 of Quick's credits; but, notwithstanding such disallowance, the judge of probate found only $47.07 in Quick's hands which had not been administered properly, besides some farming tools. Quick resigned, and John W. Miner was appointed administrator *de bonis non* of the estate of Isaac C. Quick, deceased. Complainants' solicitor thereupon filed the bill in this case to enjoin the sale, and declare the decree satisfied. The circuit judge refused to grant an injunction, and on the final hearing dismissed the bill. Raymond went on, and sold the premises under his decree, and bid them in for $4,000, leaving a deficiency of $896.64. Complainants' solicitor afterwards brought suit in the name of John W. Miner, administrator *de bonis non*, against Raymond, to recover back the money paid by Quick to Raymond for interest money due him under the decree,[1] and recovered

[1] See *Miner* v. *Raymond*, 113 Mich. 28.

a judgment against him for about $750, which has been filed as a claim against his estate, he being now deceased. Having failed to get an injunction to restrain the sale under the decree, complainants' solicitor now asks a decree declaring that the acceptance of the deed by Raymond from the Quick heirs in January, 1895, paid and satisfied the decree. The court below, after hearing all the testimony, refused to make such a decree, and dismissed complainants' bill, with costs. Complainants appeal."

It is complainants' claim, substantially, that, when Dr. Raymond took the quitclaim deed from Mr. Quick, his mortgage became merged in the greater title, and he cannot, under the circumstances here stated, now assert his mortgage claim, make sale thereunder, and bid the property in for less than the amount due on the mortgage, thereby putting him in the position where he may now present a claim for such deficiency against the estate of Isaac C. Quick, or set the same off against the judgment obtained by the administrator *de bonis non.* We think this contention cannot be sustained in the law, and that it would be inequitable to permit it. When the deed was taken by Dr. Raymond, a large payment had been made on the mortgage by the then administrator of the estate. This amount was recovered back by the administrator *de bonis non;* and Dr. Raymond, or his executrix, is now seeking only to be placed in the same position as before that recovery. It is equitable that this estate should be so placed. The proofs do not establish the fact that any agreement was made by Raymond to accept this deed of January 14, 1895, in full payment and satisfaction of his decree. The rule in equity is that a mortgage is not merged by a purchase by the mortgagee of the entire interest in the equity of redemption where the interests of the mortgagee require the titles to be kept separate; and the intent to keep them separate will be presumed when it is to the interest of the mortgagee so to keep them. *Cooper* v. *Bigly*, 13 Mich. 478. The rule is this:

"At law, when a greater and lesser, or a legal and equitable, estate coincide in the same person, the lesser or

the equitable estate is immediately merged and annihilated. But this rule is not inflexible in equity; whether or not a merger takes place depending upon the intention of the parties and a variety of other circumstances.   Notwithstanding the technical rule of law, equity will prevent or permit a merger, as will best subserve the purposes of justice, and the actual and just intention of the parties; and, in the absence of an expression of intention, if the interest of the person in whom the several estates have united, as shown from all the circumstances, would be best subserved by keeping them separate, the intent will ordinarily be implied." 15 Am. & Eng. Enc. Law, 314, and cases there cited.

See, also, *Cook* v. *Foster*, 96 Mich. 613; *Gibbs* v. *Johnson*, 104 Mich. 124; *Tower* v. *Divine*, 37 Mich. 443.

The court below very properly held there was no merger of the mortgage, and dismissed complainants' bill.   That decree will be affirmed, the defendant to recover the costs of this court.

The other Justices concurred.