HARTZ v. HILSENDEGEN.

1. REFORMATION OF INSTRUMENTS—MISTAKE—MUTUALITY.
    Only in case of a mutual mistake will equity reform a written lease of real property.

2. SAME—ESTATES OF DECEDENTS—LANDLORD AND TENANT.
    *Held*, that no mistake was established by the evidence, showing that complainant's written lease was executed by the widow of the deceased owner, in her name, and not as or for the heirs or in behalf of the estate of decedent, as averred in complainant's bill to reform the writing.

3. SAME—LIFE TENANT—LEASE—AGENCY.
    Where, after the discharge of the administrators of an estate, the widow of decedent assumed to administer the property, claiming a life interest in the real estate under the will, and in her own name executed a lease of certain business property for ten years, the heirs having a remainder interest could not be held to have bound themselves, and the lease terminated at her death.

4. SAME—EVIDENCE—CONTRACTS.
    Evidence considered, and *held*, not to show that the heirs entered into an arrangement to pool their interests with that of the widow, or that the heirs ratified or confirmed the lease as affecting their remainder.

5. SAME—ESTOPPEL—ESTATES OF DECEDENTS.
    Such remaindermen and heirs were not estopped to treat said lease as at an end, upon the death of the life tenant who executed it, where they never did anything to induce the lessee to believe that they were parties to the agreement, or were bound by it.

6. SAME—RATIFICATION OF LEASE.
    In the absence of testimony that the heirs intended to confirm the execution of a lease by the widow of deceased, or that she claimed to be acting for them, the doctrine of ratification could not apply.

7. SAME—EQUITY—MERGER.
    Equity will not enforce strictly the legal rule of merger, but will prevent or permit a merger of estates according to the
        182 Mich.—9.

actual or just intent of the parties, as it may be expressed or implied.

8. SAME—PURCHASER IN GOOD FAITH—DEEDS—INCUMBRANCES.
   Whether or not the purchaser of the premises took title in good faith without notice of defendants' lease, he obtained all the title which the remaindermen were entitled to claim by force of their deed of the premises executed immediately after the widow's death, and he could enforce any rights which they had.

Appeal from Wayne; Van Zile, J. Submitted June 8, 1914. (Docket No. 36.) Decided July 25, 1914.

Bill by John C. Hartz against Louis Hilsendegen and others for reformation of a lease. From a decree for defendants, complainant appeals. Affirmed.

*Sloman & Sloman,* for complainant.

*W. W. Wicker,* for defendant Mintz.

*William G. Fitzpatrick,* for defendant Hilsendegen and others.

STONE, J. The bill of complaint in this cause was filed for the purpose of obtaining a decree to reform a certain lease bearing date March 25, 1905, between Elizabeth Hilsendegen of the first part and John C. Hartz of the second part, purporting to let and lease certain store premises in the city of Detroit to said Hartz for the term of ten years from and after the 1st day of May, 1905, so as to disclose the real lessors thereof to be the estate of Valentine Hilsendegen, deceased, and to be for the use and benefit of the widow, said Elizabeth Hilsendegen, and the residuary legatees, Louis Hilsendegen, George Hilsendegen, and Christine Parsons, under the last will and testament of said Valentine Hilsendegen, deceased; or failing in that, that the court decree that the widow, heirs, and legatees aforesaid and Samuel Mintz, their grantee, have so dealt in relation thereto, and treated it as an

existing agreement and obligation of the estate of said Valentine Hilsendegen, for the full period set forth; that they are estopped from claiming that said lease terminated upon the death of said Elizabeth Hilsendegen; and that the court decree that said lease is a valid agreement and continues in full force and effect during the term therein set forth so long as complainant observes and performs his agreements and obligations thereunder.

A careful examination of the record has satisfied us that the learned circuit judge who heard the case at the circuit found the facts and reached his conclusions therefrom correctly; and we here adopt his findings from the evidence as follows:

"That the property and property rights involved in this contention belonged, in his lifetime, to Valentine Hilsendegen.

"On the 4th day of June, 1887, Valentine Hilsendegen made and executed his last will and testament, by which he devised and bequeathed his property, including the property in question, to his three children, George, Louis, and Christine, leaving to his wife, Elizabeth, her legal and statutory rights in the same.

"On the 16th day of December of the same year (1887) he added to his will a codicil, which is in the following language: 'I, Valentine Hilsendegen, of the city of Detroit, Michigan, being of sound mind, do hereby make and execute this, my codicil to my last will bearing date the fourth day of June, A. D. 1887, and hereby change and vary the provisions of my said will in the following particulars: I will and bequeath to my wife, Elizabeth Hilsendegen, during her life, after the payment of all my debts, accruing interest, taxes, etc., all the income and revenue of my estate, to be used and disposed of by her for her support, as she shall wish and direct. In witness whereof,' etc.

"Valentine Hilsendegen died April 3, 1888. The will was probated. His two sons, George and Louis, were appointed administrators, with the will annexed. John B. Corliss, or his firm, Corliss, Leete & Joslyn, were attorneys in the probate court for the estate.

When appointed administrators, the collection of rents, and the looking after the property was turned over to, and attended to by, the said administrators. On petition of the widow, the probate court allowed to Elizabeth, the widow, $150 per month for her support during the administration of the estate.

"At the time of his death John C. Hartz was occupying the property in question, or a portion of it, and during the administration it is claimed another lease was executed by the administrators; this lease, however, is not in evidence in this case.

"During the administration of the estate, books of account with the estate of Valentine Hilsendegen were kept by the administrator George Hilsendegen, and a system adopted as shown by Exhibit 1 in evidence. Printed checks running from the estate—also receipts—were used.

"The estate was closed, and John B. Corliss was employed as attorney for Elizabeth Hilsendegen, and the administrators turned over to Corliss the books, papers, leases, checkbooks, etc., etc., and he assumed control under the direction of Elizabeth Hilsendegen, who is claimed to be the life tenant of the property in question and other property, of the deceased, by virtue of the codicil of his will.

"Hartz's lease to the property expiring in 1895, a new lease 'Exhibit X,' was made and executed by Elizabeth Hilsendegen to him for ten years, John B. Corliss, as attorney for Elizabeth Hilsendegen, doing the business for her. Hartz held the property under this lease during the ten years this lease ran, Corliss collecting the rents and accounting to Elizabeth Hilsendegen for the same. At the termination of the lease, 'Exhibit X,' in April, 1905, another lease, the lease in question, was made and executed to complainant, John Hartz, by Elizabeth Hilsendegen ('Exhibit A') for a term of ten years. The negotiations for this lease were conducted through John B. Corliss, acting as the attorney of Elizabeth Hilsendegen. Hartz occupied the premises under this lease, and still occupies them. This lease is signed E. Hilsendegen, the same as 'Exhibit X.' Both these leases or copies of them have been in the possession of John Hartz.

"The complainant claims that he supposed that Elizabeth Hilsendegen executed this lease on her own

behalf, and also for the heirs—that is, her three children—but there is no proof of any statement, either oral or written, on the part of any of the Hilsendegen heirs or Elizabeth Hilsendegen to him or any person warranting such a conclusion, and the lease was not executed in a manner that would indicate that she was so acting. All that was said at the time of the execution of the lease, as it is claimed by Hartz, was, in substance, made by him. 'Oh, she signs the lease, does she?' and, as he says, Corliss answered, 'Yes; that is all right,' or words to that effect.

"Complainant, Hartz, claims that at the time of obtaining the lease in question he could have leased property on Gratiot avenue for a less rental than he was paying, and so represented to Corliss, and that for this reason his rent was cut down from two hundred seventy-five ($275.00) dollars per month to two hundred fifty ($250.00) dollars per month; that after the lease was executed he went to Corliss and asked for certain improvements, and then Corliss said he could not do this until he had seen the boys, meaning George and Louis; and that afterwards.he said he had seen them and it was agreed to.

"Proofs are adduced by different persons employed to the effect that they dealt with Corliss, and that he paid them. Some of the checks, however, are signed by Elizabeth Hilsendegen. It also appears that for those improvements the rent was increased $10 per month.

"Checks for the rent were. given in the following manner: From August 3, 1895, to April 28, 1900, by John C. Hartz to John B. Corliss, and indorsed largely, but not always, by John B. Corliss, Estate of V. Hilsendegen, or in a few instances V. Hilsendegen Estate of Valentine Hilsendegen, by John B. Corliss, and in some instances John B. Corliss, V. H. Estate. At the end of this period it appears that the heirs made some objection, or at least criticised the giving of checks to John B. Corliss, and the checks from May, 1900, to May, 1905, were given by John Hartz to the estate of V. Hilsendegen, and up to May, 1904, indorsed by using rubber stamp 'Estate of Valentine Hilsendegen by' John B. Corliss or Corliss, Andrus & Leete, or Corliss, Leete & Joslyn, and from May, 1904, indorsed by using rubber stamp, 'Pay Citizens' Sav-

ings Bank, Detroit, or Order Est. V. Hilsendegen.'
From June 16, 1905, to June 1, 1909, checks were
made by John C. Hartz to estate V. Hilsendegen, and
indorsed by the same rubber stamp last above de-
scribed. From June 1, 1911, to June 1, 1912, checks
were made by 'The Hartz Clothing Co.', and indorsed
by last-mentioned rubber stamp. In the accounts that
were kept by Mr. Corliss or his firm reference was
made to the estate.

"On December 18, 1909, a notice to quit was served
upon complainant, Hartz, signed by John B. Corliss,
as attorney for Elizabeth Hilsendegen, and John B.
Corliss, as attorney for estate of Hilsendegen. Upon
this notice was instituted the proceedings to quit, the
case finally going to the Supreme Court, reported 165
Michigan, p. 255.

"Some stress is laid upon a letter returning a check
to John C. Hartz written December 2, 1909, signed by
Corliss, as attorney for E. Hilsendegen and estate V.
Hilsendegen. This was written in connection with
the proceedings to forfeit the lease, because Hartz had
sublet to the Hartz Clothing Company the case re-
ferred to as going to the Supreme Court.

"At a time when Elizabeth Hilsendegen and some
of the heirs were absent, a power of attorney was
given to Corliss and used in a few instances in execut-
ing leases and making contracts. Throughout the
course of the business of the estate with John B. Cor-
liss, more or less reference was made to the estate of
V. Hilsendegen, but it is claimed, and seems probable,
that this was done for convenience in keeping it sepa-
rate from Mr. Corliss' other business with other
clients and his own private business; for in 1891 the
estate of Valentine Hilsendegen was closed up. The
probate court and the records of the court would show
that there was no longer any estate of Valentine Hil-
sendegen. As a matter of fact, Elizabeth Hil-
sendegen was actively controlling the property and
rents, issues and profits of the same from the close
of the estate up to the time it was sold. She signed
all the leases, except some three that were made while
she was absent. She signed checks to pay running
expenses of the property, and for repairs and im-
provements made upon the Hartz property. She di-
rected Mr. Corliss as to the distributing of moneys in

his hands given to the heirs, and Hartz was holding under leases from her for some 18 years. And there was never any authority from her in writing or by parol giving to any person authority to transact the business of leasing, selling, or operating, except to Mr. Corliss.

"With notice that Hartz was occupying the building under lease from Elizabeth Hilsendegen—and all that was of record and all that had transpired with reference to Hartz's right to possession—on the 24th day of June, 1912, defendant Samuel Mintz, having a short time previous contracted for the property, received, duly executed by all the heirs and the widow, Elizabeth Hilsendegen, a deed of the property. While it may be said that he was not in all respects a bona fide holder, in that he knew of Hartz's occupancy, and the notice that that occupancy brought him, and as he testifies knowing that Elizabeth Hilsendegen was a life tenant and her age, he did not have actual knowledge of all the details of the transaction of John B. Corliss. It is a fact that soon after obtaining title he talked with Hartz about Elizabeth Hilsendegen having but a life estate, and at that time, and for some time previous, Hartz had received knowledge of that claim.

"Elizabeth Hilsendegen died January 26, 1913.

"As to Hartz's notice, it must be found, as matter of fact, that he knew that Valentine Hilsendegen died seised of this property; that his estate was probated in the probate court for Wayne county; that the records of that court and the records in the Hilsendegen estate were public and open to his inspection; that the will of Hilsendegen, if he made a will, was there for his inspection, and, if he died intestate, that fact could be discovered by him; that, the will being the public records of the court, he must be held to know its contents, because the records and files of the court are notice to everybody. Not only would the will be of record in the probate court, but it should be of record in the office of the register of deeds for Wayne county.

"Mintz had notice of all this, and therefore knew that Hartz and all persons dealing with the property had notice of those facts.

"There is no proof of actual fraud being exercised

by any one connected with this case in any of the dealings or transactions relating to this property.

"These I find to be the substantial controlling facts in the case."

An examination of the record clearly discloses that there was no mistake of any kind in the making or executing of the lease of 1905. It was between the same parties as its predecessor. There is no evidence to the effect that complainant did not know with whom he was dealing. As matter of fact, complainant knew that he was dealing with Elizabeth Hilsendegen, and the lease so states.

It is not necessary to cite cases to the effect that equity will not reform a written lease for mistake where it does not appear that the mistake was mutual, for in the instant case it does not appear that there was any mistake of fact on the part of either party. We shall not further speak of the subject of reformation of the lease, for the reason that, under the evidence, we are satisfied that neither party ever had any intention of executing it in any other than the precise form in which it was executed.

It is urged in this court that Elizabeth Hilsendegen did not take a life estate under the will of her deceased husband, and that she was not entitled to the possession and control of the property for life. We are unable to see how this position, if correct, can benefit the complainant or help his standing under the evidence. Whether she was strictly a tenant for life or not, it is manifest that, under the terms of the will, all of her interest in the estate ceased at her death. If she had no life estate, under the will, then she could at the most have but a dower interest, which would cease at her death. Neither does it aid complainant's standing to say that the lease was a nullity.

Her lease standing upon its terms certainly did not bind the children, the other legatees. It is very evident that, whatever the interest of Elizabeth Hil-

sendegen was in the estate of her deceased husband, it was handled and treated by her and her children as that of a life tenant, and the children are not here complaining. By the clear weight of the evidence it appears that she, after the discharge of the administrators, took charge and possession of the estate, and by herself and her attorney, Mr. Corliss, administered the affairs to the date of her death. The claim of complainant that there was a pooling of interests by Elizabeth Hilsendegen and her children is not made out by the evidence. The evidence is more consistent with what we have stated, to wit, that after the discharge of the sons as administrators the mother took charge of affairs, and, by herself and her attorney, conducted and administered them, than it is with the claim that there was a pooling arrangement. It clearly appears that the mother and her children understood that she had a life use of the property, with remainder over to them. This view of the case reconciles the entire conduct of the parties. The children were interested in the estate, and it was proper that they should be consulted about the insurance upon it, the exchange of a part of it for other property which was by the mother's consent deeded to the children severally, and it was not strange that she from time to time gave or passed over to them sums of money from the estate.

Counsel for complainant have claimed much for the manner in which the accounts were kept after the discharge of the administrators. The most that can be said for this is that it was a mode of bookkeeping adopted by the attorney to keep Mrs. Hilsendegen's affairs separate from his own, or those of his firm. Mr. Corliss was the attorney of the mother, and not of the children. The latter had nothing to do with the bank account, or the manner in which that account was kept. Except when connected with the attempted sale, or the final sale of the property in ques-

tion, Mr. Corliss in no sense acted on behalf of the children or any of them. It is not necessary to say that all were interested in the final sale to Mr. Mintz, and in the prior attempted sale. In no proper sense can it be said that the interest of the mother and the interests of the children were mingled in the making of the lease in question, or in handling the proceeds of the lease. Is this a case where the doctrine of an estoppel *in pais* should apply as against the children, binding them to the terms of the lease? That they never did or said anything to induce the complainant to believe that they were parties to, or were bound by the lease, is clear from the complainant's own testimony. He claims that Mr. Corliss led him to believe that he was acting for the children. If Mr. Corliss did so represent, which he denies, this would not bind the children.

Complainant testifies that he had no conversation with any of the children relating to the interest of the mother in the estate or property in question. He also testifies that he noticed the way in which the mother signed the lease, and surmised that she might be claiming to be the owner of the property for life. So, aside from the statute of frauds (which would be an insuperable obstacle to the application of the doctrine of an estoppel to a ten-year lease), we are of opinion that there has been nothing in the acts or conduct of the children which could give the complainant the right to invoke the doctrine of an equitable estoppel.

Neither is there any room here for the application of the doctrine of ratification. Not only is there an entire absence of evidence of intention on the part of the children to ratify or confirm any action of the mother in making the lease, but there is no evidence that Mrs. Hilsendegen or Mr. Corliss, her attorney, in writing, or otherwise, ever attempted to bind the children in the making of the lease, or ever claimed

to act for anybody but Elizabeth Hilsendegen in that matter. *Ferris* v. *Snow,* 130 Mich. 254 (90 N. W. 850) ; *Heyn* v. *O'Hagen,* 60 Mich. 150-156 (26 N. W. 861).

Counsel for complainant claim a merger of the interests of Elizabeth Hilsendegen, the life tenant, and the remaindermen, the children, by the conveyance to defendant Mintz, and cite *Ryder* v. *Flanders,* 30 Mich. 336, in support of that claim. We have held that a court of equity is not bound by the legal rule of merger, but will prevent or permit a merger of estates according to the actual or just intention of the parties, whether expressed or implied. *Ann Arbor Sav. Bank* v. *Webb,* 56 Mich. 377 (23 N. W. 51)´; *Quick* v. *Raymond,* 116 Mich. 15 (74 N. W. 189) ; *Wettlaufer* v. *Ames,* 133 Mich. 201 (94 N. W. 950, 103 Am. St. Rep. 449).

The deed to defendant Mintz was made subject to the lease, and we can see no reason why he should not assert all claims and rights, upon the death of Elizabeth Hilsendegen, that the children could assert had the deed not been given. The rule has no application in so far as complainant is concerned, and his rights cannot be enlarged by reason of such deed. It is not necessary to a disposition of the case to inquire whether or not defendant Mintz was a bona fide purchaser. He certainly is entitled, in any view of the case, to any and every defense available to the other defendants.

In our opinion, the circuit court reached the right conclusion, and the decree of the court below is affirmed, with costs.

McALVAY, C. J., and BROOKE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. KUHN, J., did not sit.