ODD FELLOWS HALL ASSOCIATION *vs.* GEORGE McALLISTER
& others.

Suffolk.     January 15, 1891. — February 26, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, & MORTON, JJ.

*Replevin — Possession — Evidence — " Trustee " — Writ — Surplusage.*

A corporation, in which the stockholders were Odd Fellows, erected a building for the use in part of lodges and encampments of that order. The lodges, whose membership included that of the encampments, held a fair under the management of a committee consisting largely of such stockholders, and with the proceeds furniture was bought, and placed by the committee, without other act affecting the title or possession, in the halls to be occupied by the order. Subsequently, the encampments leased one of the halls and used the furniture therein, and, at the end of the term, moved elsewhere and took the furniture with them. *Held*, that whether the corporation had such prior possession of the furniture as would entitle it to maintain replevin therefor was for the jury.

At the trial, evidence was excluded that the halls in the building had been occupied by other than the order of Odd Fellows, and that some of the furniture purchased with the proceeds of the fair had been sold by the lodges independently of the plaintiff corporation. *Held*, that the evidence was properly excluded.

The description of a defendant in a writ in an action at law as " trustee " is surplusage.

REPLEVIN of furniture. The writ described each defendant as " trustee " of an encampment of the " Independent Order of Odd Fellows."

At the trial in the Superior Court, before *Lathrop*, J., there was evidence tending to show that the plaintiff was a corporation duly organized by members of the order of Odd Fellows in 1868 or 1869, but with no legal connection between it and that

order; that the corporation was the owner of a building in Boston, erected by it for the use of the various lodges and encampments of the order, all of which were voluntary associations, as well as for the occupation of the Grand Lodge; that before the building was completed the plaintiff duly tendered the use of it for a fair to raise funds with which appropriately to furnish halls therein to be used by such lodges and encampments; that the fair was held in the building under the supervision of a committee of sixty members chosen by the lodges, the immediate control and management thereof being exercised by an executive committee selected out of the general committee, and consisting largely of stockholders in the plaintiff corporation; that the encampments as such did not take part in the fair, all of their members being also members of lodges; that the proceeds of the fair were mainly expended by the committee in the purchase of furniture for three halls to be occupied by the lodges, and for a hall to be occupied by the encampments; that beyond the act of placing the furniture in the halls none of it was ever transferred to the plaintiff corporation, formally or otherwise; that, at the time the furniture was put in, neither the lodges nor the encampments had become tenants of the building, although it was understood that they were to do so when the building was ready for occupancy; that the three encampments, of which the defendants were trustees, being the only encampments in the city of Boston at the time the fair was held, after the hall was fitted up for their use went into occupation thereof under a lease dated February 1, 1873, providing, among other things, that all " furniture and property of any kind which may be on the premises during the continuance of this lease is to be at the sole risk and hazard of the lessees "; that while occupying the hall the encampments used the furniture, and the plaintiff corporation never exercised any control over it; and that the encampments continued in occupation under this lease, or renewals of the same, and at the expiration of the latest renewal, having failed to agree upon a new lease, they hired a hall in another ·building, and went into occupation of the same, and removed thereto the furniture, including the furniture in question.

One Gardner, a director of the plaintiff corporation and a witness called by the defendants, was asked, on direct exam-

ination, " Whether or not either of these halls that have been called the encampment halls and the lodge halls are occupied to-day, or have been, by any other than the Independent Order of Odd Fellows." The judge, upon objection being made by the plaintiff, excluded the question, and the defendants excepted.

The defendants offered to show that some of the original furniture purchased with the funds of the fair had been sold by the lodges independently of the plaintiff corporation, and that repairs were made upon the furniture by the lodges out of their own funds. The judge excluded this evidence, on the ground that it did not relate to the specific property covered by the writ, and also on the ground that he did not think, " if an owner of a building has property put into that building by some outside person, and then leases rooms in that building, that the fact that the tenants of a portion of the rooms choose to sell that furniture, or dispose of it, could affect the custody or control of the corporation, if the custody and control were first vested in it"; and the defendants excepted.

The plaintiff corporation did not contend, for the purposes of this action, that it was the absolute owner of the property, but did contend that it was entitled to the immediate possession and control of the same, and that it had been wrongfully removed from the building by the defendants.

The defendants requested the judge to rule, among other things, (1) " that upon the evidence the plaintiff cannot maintain this action," and (2) " that the action could not be maintained against the defendants as trustees." The judge refused so to instruct the jury, and submitted the case to them.

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*F. E. Snow*, (*J. F. Kilton* with him,) for the defendants.

*H. G. Allen*, for the plaintiff.

HOLMES, J. This is an action of replevin for certain furniture purchased with the proceeds of an Odd Fellows' fair, and placed in the plaintiff's building by the committee of the fair. The defendants are trustees of voluntary associations, — branches, we presume, of a larger voluntary association, — called encampments of Odd Fellows, who hired the rooms in which the furniture was, and removed it when their lease ended and they

moved elsewhere.   The main question before us is whether there was any evidence on which the plaintiff was entitled to go to the jury.

If the case stopped with the foregoing facts, there could be no doubt that the plaintiff would be entitled to recover.   Whatever may have been the old law, (Y. B. 20 Hen. VI. 18, pl. 8,) at the present day one who has possession of goods is entitled to keep them as against any one not having a better title, and therefore may maintain replevin for them, as he may trover. Pub. Sts. c. 184, § 10.   *Rich* v. *Ryder*, 105 Mass. 306, 310. *Shaw* v. *Kaler*, 106 Mass. 448, 449.   The plaintiff got possession of the furniture when it was placed in the plaintiff's building, the more plainly that we must take it to have been placed there with the plaintiff's knowledge.   Much less than that has been held to constitute possession.   *Barker* v. *Bates*, 13 Pick. 255, 257, 261.   *McAvoy* v. *Medina*, 11 Allen, 548.   *Elwes* v. *Brigg Gas Co.* 33 Ch. D. 562, 568.   *Regina* v. *Rowe*, Bell C. C. 93.   Y. B. 12 Hen. VIII. 9, pl. 2.

The question actually presented is whether the existence or effect of the plaintiff's prior possession is taken away, as matter of law, by other facts not in controversy.   We do not propose to discuss the evidence at length; it will be enough to state the grounds of our answer in a general way.   The plaintiff, for the purpose of this case, does not claim the absolute ownership of the property.   It seems clear that, whether there is a valid and binding trust or not, if the plaintiff should ignore the Odd Fellows altogether and should use the furniture for purposes of private gain wholly disconnected with that association, it would be departing from the understanding on which it received the goods.   We are far from saying that there was not some ground for inferring that the gift, if it was a gift, was intended to benefit the particular bodies who were known to be intending to occupy the rooms where the furniture was placed, and who are represented by the defendants.   They were the only encampments of Odd Fellows in Boston at the time.   Or, if it be put another way, we do not say that the jury might not have inferred that the title remained in the same persons, whoever they might be, who owned the proceeds of the fair.   No doubt the mode in which the money was raised, the circumstances of

the fair, and even the provision in the lease that all furniture on the premises should be at the sole risk of the lessees, lent some countenance to one or the other of these views. Probably, in fact, as usually happens in such cases, no one thought accurately about the question where the title would be after the furniture was placed in the building. But the one legal person to be seen in the midst of the voluntary groups surrounding it was the plaintiff. The committees and organization of the fair vanished as such with the occasion. The fair was not managed by the encampments whose trustees now claim the property, although the managers of the fair were members of those encampments. The purposes of the fair would seem to have extended to the benefit of Odd Fellows outside of the then encampments in question. The plaintiff was assumed to be, and was, in entire accord with those purposes. Its stockholders were all Odd Fellows, and included a good·many of the executive committee of the fair. It seems to us at least a possible inference from the evidence that the legal title was vested in the plaintiff. See *Brookline* v. *Sherman,* 140 Mass. 1, 5. Or if that be deemed inconsistent with the plaintiff's admission, which we hardly think it to be, the jury were well warranted in finding that it was not intended to transfer to or to retain in the defendants the right to remove this property from the building in case they moved out of it. Certainly it would have surprised everybody if the encampments had undertaken to divide up the property among their members.

The question whether the rooms in question were or had been occupied by others than the Odd Fellows was rightly excluded. Even if the plaintiff had abused its honorary or equitable obligations, it would not have bettered the defendants' case.

We cannot say that the judge erred in excluding evidence of sales by the lodges, independently of the plaintiff, of other furniture bought with money from the fair. It does not appear affirmatively that the furniture stood on the same footing as that in question, or that a collateral investigation would not have been necessary, which the judge in his discretion might exclude, and it would seem from the terms of the offer and the ruling that the corporation knew nothing of the sale, in which case the tenants could not justify one wrongful act by proving another.

The description of the defendants as trustees in the writ was surplusage.    There is no provision by which judgments and executions against trustees run against the trust estate in their hands, as in the case of executors and administrators.    Even when they are entitled to indemnity from the trust fund, the judgment in an action at law is against them as individuals, whatever may be the doctrine of equity.    *Mason* v. *Pomeroy*, 151 Mass. 164.    Therefore it makes no difference in an action against them whether they are trustees or not, and *Yarrington* v. *Robinson*, 141 Mass. 450, has no application.

*Exceptions overruled.*