Isaac Mitchell and Samuel Picard *vs.* Minnesota Fire Ass'n.

Submitted on briefs, Dec. 24, 1891.   Decided Feb. 1, 1892.

**Principal and Agent — Ratification.**—Where a party acting has no au-
thority to act for a third party, and does not profess at the time to act for
him, the subsequent assent of such third party to be bound as a principal
has no operation.   A ratification is only effectual when the act is done
by a person professedly acting as the agent of the party sought to be
charged as principal.

**Evidence Examined.**—The evidence in this case, which was brought to
recover upon a fire insurance policy, examined and considered.   *Held* to
conclusively show that certain persons who, as adjusters, entered into
an agreement with plaintiffs to submit the amount of their loss to arbi-
tration, and subsequently stipulated as to the amount thereof, had no au-
thority to act for, and did not profess at the time to act for, defendant
company.   *Held, further*, that the evidence failed to show that defend-
ant had waived the requirements of its policy as to notice of loss and
proof of loss, or that it had in any manner estopped itself from demanding
that these requirements should be complied with.

Appeal by defendant, Minnesota Fire Association, from a judg-
ment of the district court, Hennepin county, *Canty*, J., entered Au-
gust 13, 1891, in favor of Isaac Mitchell and Samuel Picard, plain-
tiffs, for $1,240.60.

March 11, 1889, defendant issued to plaintiffs its policy of insur-
ance for $2,500, for one year, on a stock of clothing manufactured
and being manufactured, and clothing supplies, situated in the second
loft of the building No. 626 Broadway, New York.   Among other
things, the policy provided that, if a fire should occur injuring the
property, the assured should give immediate notice of the loss in
writing to the association, and assort the articles, separating the dam-
aged from the undamaged, and should, as soon after the fire as pos-
sible, make an inventory of the whole, including such as should be
totally destroyed, and furnish it to the association, naming the quan-
tity, quality, and cost of each article and the amount claimed on each.
In case differences should arise as to the amount of loss or damage,
the policy provided that the dispute should be submitted to arbitra-

tion, each party to select one person and they to choose an umpire. The insured, if required, were to submit to examination under oath, produce their books of account, and exhibit vouchers and papers. They were also required to render to the association, as soon as possible after such fire, a particular and sworn statement of their loss, and of their knowledge and information of the origin and circumstances of the fire, and to set forth therein all other insurance on, and their title and interest in, the property injured or destroyed.

The property insured was injured, and a part of it destroyed, by a fire on November 18, 1889. The loss was $23,900; the total insurance, $54,250, divided among 28 insurance companies. Plaintiffs claimed to be due them from defendant $1,100, as its share of the loss. They claimed that they mailed to defendant a notice of the fire the day it occurred. But the notice was never received by it, and it did not have any notice or knowledge of the loss until January 18, 1890, when proofs of loss were received by defendant. But the proofs were not satisfactory, and were returned. They contained no itemized statement of the property injured or destroyed, and no excuse for the omission. They purported to have been sworn to on January 4, 1890.

Halsey & Pitcher and one George W. Gilbert, insurance adjusters residing in New York, were employed by some of the insurance companies interested to investigate the loss, and adjust with plaintiffs the liability of the companies therefor. They proceeded to do this, and assumed to act for all the companies, including the Minnesota Fire Association, and made an agreement with plaintiffs, signing it with their own names as adjusters, fixing the loss, and dividing it among the companies in proportion to the amounts of the respective policies. Defendant did not employ them, or know of this proceeding or of the fire, until requested to pay the part ($1,100) assigned to it. Defendant promptly repudiated the assumed agency of these adjusters, and stood upon its rights under the policy.

The action was tried May 19, 1891. The jury found for the plaintiffs $1,191.62, the amount claimed, with interest, and also found specially that defendant did not receive any notice of the fire or loss

until January 17, 1890. Defendant moved for a new trial, which was denied. Judgment was entered upon the verdict.

*Koon, Whelan & Bennett,* for appellant.

The plaintiffs failed to give defendant notice of the loss until January 17, 1890. This was not the immediate notice of loss required by the policy. *Plath* v. *Minnesota Farmers' Mut. Fire Ins. Ass'n,* 23 Minn. 479; *Huntley* v. *Whittier,* 105 Mass. 391; *Freeman* v. *Morey,* 45 Me. 50.

No waiver or excuse for not giving the notice is set forth in the complaint. *Boon* v. *State Ins. Co.,* 37 Minn. 426.

The court should have granted the motion of appellant for a judgment in its favor upon the special finding. *Twist* v. *Winona & St. P. R. Co.,* 39 Minn. 164.

No ratification is effectual unless the act has been done by the agent avowedly on behalf of the person who ratifies. Ewell's Evans, Ag. p. 55; Story, Ag. § 251a; Mechem, Ag. § 127.

When the evidence given at the trial, with all the inferences the jury could properly draw from it, are insufficient to support a verdict for the plaintiff, the court should not submit the case to a jury. *Randall* v. *Baltimore & O. R. Co.,* 109 U. S. 478, 483; *Bartelott* v. *International Bank,* 119 Ill. 259, 271; *Reed* v. *Inhabitants of Deerfield,* 8 Allen, 522; *Abbett* v. *Chicago, M. & St. P. Ry. Co.,* 30 Minn. 482.

*Sutherland & Van Wert,* for respondents.

Notice of loss was duly inclosed in an envelope, and directed to the appellant at its home office, postage paid, and deposited in the post office at the city of New York. Such a letter is presumed to reach the person to whom directed in due course. *Melby* v. *Osborne,* 33 Minn. 492; *Pennypacker* v. *Capitol Ins. Co.,* 80 Iowa, 56.

The stipulation of the policy of insurance relating to the giving of notice of loss is made for the benefit of the insurer, and hence can be waived by the company, and any act on the part of the insurer inconsistent with an intention to insist upon the failure to give notice is a waiver. May, Ins. (2d Ed.) § 464; *Parker* v. *Amazon Ins. Co.,* 34 Wis. 363; *Illinois Mut. Fire Ins. Co.* v. *Archdeacon,* 82 Ill. 236; *Williamsburg City Fire Ins. Co.* v. *Cary,* 83 Ill. 453.

If there was a waiver of the giving of the notice of loss, it is immaterial whether appellant received the notice of loss or not. The answer of the jury to an immaterial question will not control the general verdict. *Finch* v. *Green,* 16 Minn. 355, (Gil. 315.)

COLLINS, J. Action upon an insurance policy issued by defendant company upon personal property in the city of New York. The usual provisions or conditions were in the policy in reference to the giving of written notice to the company immediately should a loss occur, requiring the assured to forthwith put in order, assort, and arrange the various articles insured, separating the damaged from the undamaged, to make an inventory of the property claimed to have been wholly destroyed, naming the quality, quantity, and cost of each article, and in a certain specified form or manner to make and render to the company a particular statement or proof of loss as soon as possible thereafter. The principal contention upon the trial was as to whether these provisions or conditions had been waived by the company. The property insured was clothing, manufactured and being manufactured, and clothing supplies. A large number of companies were interested, some of them being called " outside companies " by the witnesses, meaning, we suppose, those not organized under the laws of the state of New York. The fire occurred on November 18, 1889, and from the testimony of one witness it appeared that written notice thereof was mailed to defendant on the same day. The latter, a corporation of this state, denied receiving this notice, and, a special question on this point having been submitted to the jury, they found that defendant did not receive any notice of the fire prior to January 18, 1890. The notice which it then had will be referred to later on. The assured made no attempt to prove that they had in any manner complied with the requirements of the policy as to property damaged or destroyed, or as to a rendition of a statement or proof of loss. To be brief, the plaintiffs' claim was that defendant had waived these provisions and conditions, and this was really the only issue upon the trial, although there was considerable testimony upon other points. It now seems to be conceded that, unless this waiver was made to appear by sufficient competent evidence, the general verdict for plaintiffs must be set aside.

We are unable to discover the slightest foundation for asserting that defendant company ever waived in any manner the provisions and conditions of its policy. To the contrary, the testimony was that it resolutely and repeatedly refused so to do from the time it was first advised of the fire,—some two months after it occurred, according to the special finding. It seems that soon after the loss Halsey & Pitcher, a firm of insurance adjusters, and one Gilbert, also an adjuster, all in that line of business in New York city, presented themselves to plaintiffs as adjusters of the loss. Despite defendant's objections, plaintiffs were permitted to prove upon the trial what these adjusters said to them in a general way as to their authority to act for the interested insurance companies. There was not a particle of testimony in the case that either were empowered to act for defendant company, or that either actually claimed or pretended to be so authorized, or that at the time defendant had the slightest knowledge of their acts in reference to the loss. Neither of these adjusters testified upon the trial of this action, and, except as the same might be surmised from what they said to plaintiffs, and from what they subsequently did in the way of adjustment of the loss, there was nothing to show that they had or pretended to have authority to act for any one. On December 23d a writing, in which it was stipulated that the amount of the loss should be submitted to, and be determined by, certain persons as appraisers, was signed by plaintiffs as of the first part. The purported parties of the second part, according to the body of this writing, were the insurance companies represented and interested in the loss. These companies were not named in or about the paper, and the only signers except the plaintiffs were Gilbert and one Crintz, who appended to their signatures the word "Adjusters" simply. On December 24th the appraisers attempted to make an award in writing, but owing to a mistake this attempt, it is agreed, proved abortive. However, on January 4th, Halsey & Pitcher and Gilbert, signing as adjusters, and the plaintiffs, agreed in writing that the amount of the loss should be fixed and compromised at a certain sum,—really, as we understand the testimony, the amount which the appraisers attempted to award. There was nothing about this agreement to show for whom the ad-

justers were acting. How the amount was arrived at by any of these persons does not appear, except that plaintiffs' bookkeeper furnished what he has named a "commercial statement" from the books of the concern.

On the 17th of January there was received through the mails by defendant company a so-called "proof of loss," and this was the notice of the loss referred to hereinbefore as the first information defendant had of the fire. It did not conform to the terms and requirements of the policy, but was based entirely upon the alleged compromise of January 4th, and was promptly returned by defendant's secretary with a letter in which he stated that, when received, it was the first intimation had by the company of the fire. The proofs were rejected and the compromise repudiated in unequivocal language. To this, plaintiffs, by one Goldstein, who was another insurance adjuster, replied by letter of date January 24th, again sending on the alleged proofs of loss. In the letter there was no claim that defendant company had known of the adjustment, or had in any manner empowered any person to represent it, but it was in the nature of an explanation of the transaction, coupled with the assurance that a fair settlement had been made. February 3d, defendant's secretary, answering this last communication, again wrote plaintiffs, distinctly refusing to recognize the claim as compromised, and sending back the proofs, because of their nonconformity to the policy stipulations. A month later, in reply to a demand for payment made by plaintiffs' attorney, defendant reiterated and restated its position. Another letter was written by defendant's secretary in regard to the claim, dated July 15th, and, as we read the record, the right to sustain the verdict is based upon the contents of this letter, which was addressed to the adjuster Gilbert. The communication from Gilbert which elicited this letter was not introduced in evidence, but a part of it was quoted by the secretary in his epistle. There was but one expression in the letter which could be twisted into anything like an admission of original agency, or that defendant had in any way recognized Gilbert's right to act for it, and that was an inquiry as to why the latter had not written in the same vein when he forwarded a bill for services in the adjustment.

This, without an explanation, might indicate that his authority to act and his actions had been recognized by the liquidation of his charge for services, but it was shown, and was undisputed, that defendant company refused to pay the bill when presented, and had always refused to pay, upon the express ground that it had not employed Gilbert, and had steadfastly declined to accept the result of his labor. The balance of the communication was a long, rambling discussion of the reasons on which defendant based its refusal to pay plaintiffs the amount which Gilbert had approved and certified as "being in accordance which the settlement made for and accepted by the other companies interested," to use his own words. The trial court erred when permitting testimony as to what was said by the adjusters in reference to their authority to act for the insurance companies. It did not tend to show that they were authorized, or pretended to be authorized, to act for defendant company, and, if it had, such testimony was inadmissible without proof of agency. And for like reasons the agreement to submit the amount of the loss to arbitration, and what was done by the arbitrators, should have been excluded, and also proof of the adjustment and compromise made between the plaintiffs and the adjusters. This all tended to mislead the jury on the question of agency. There was a total failure to establish that either of the adjusters were authorized to act in any manner in behalf of defendant company, and the respondents do not argue to the contrary. But, confounding the doctrine of ratification with that of waiver and estoppel in cases of this character, respondents' counsel contend that, when writing the letter to Gilbert, defendant company ratified the unauthorized acts of an agent. As before stated, the letter cannot be so construed, were we to admit that Gilbert was an agent. But the law is that where the party acting has no authority to act for the third party, and does not profess at the time to act for him, the subsequent assent of such third party to be bound as a principal has no operation. A ratification is only effectual when the act is done by a person professedly acting as the agent of the party sought to be charged as principal. Story, Ag. § 251a; Ewell's Evans, Ag. p. 55; Mechem, Ag. § 127; 1 Amer. & Eng. Enc. Law, 431, and cases cited in note 1. As Gilbert was,

confessedly, a stranger to defendant, and as there was no proof that he professed to act in its behalf, the court erred when submitting the question of ratification to the jury.   The only manner in which defendant company could be made liable, the requirements of the insurance contract not having been complied with as to notice and proof of loss, would have been upon the claim that it had waived these requirements, and thus by its course of conduct estopped itself from demanding strict compliance with the terms of the policy.   There was an absence of proof as to waiver.   On the contrary, the proof was plenary that defendant insisted from first to last that the conditions should be observed.

Judgment reversed.

(Opinion published 51 N. W. Rep. 608.)