FERRIS *v.* SNOW.

1. CONTRACT UNDER SEAL—PERSONAL LIABILITY OF STRANGER.
   A party not named in a contract under seal for the purchase of land, and which does not purport to be made in his behalf, is not liable for the purchase price, in the absence of some act of ratification.

2. SAME—WHEN CANNOT BE RATIFIED.
   There can be no ratification of a contract by a stranger to it when neither party to the agreement intended or understood that it was being made for or in behalf of such third person.

3. SAME—PURCHASE PRICE.
   The fact that a stranger to a land contract intended to procure title to part of the premises through the vendee, and afterwards paid some interest on it, does not make him liable for the purchase price, if the vendee was not acting for him in making the contract.

Cross-appeals from Wayne; Hosmer, J. Submitted December 12, 1901. (Docket No. 173.) Decided April 8, 1902.

Bill by Loyde L. Ferris, individually and as administratrix of the estate of George W. Ferris, deceased, against Frank E. Snow, Fremont Woodruff, William A. Jackson, and Georgia F. E. Ferris, Jeanette V. Ferris, and Thomas A. Ferris, infants, by Loyde L. Ferris, guardian *ad litem*, for the specific performance of a land contract. From the decree rendered, all parties except defendant Snow appeal. Reversed, and bill dismissed.

*George W. Radford*, for complainant, and of counsel for infant defendants.

*De Forest Paine*, for defendants Woodruff and Jackson.

*George C. Morse*, for infant defendants.

HOOKER, C. J.    George W. Ferris and the complainant were husband and wife.    On January 2, 1893, they joined in a land contract under seal, whereby they agreed with Frank E. Snow, trustee, to sell to *him*, for the sum of $21,500, certain premises then owned by said George W. Ferris, said Snow, trustee, undertaking to pay therefor in the manner and at the times specified in the contract. Ferris subsequently died, and after payment of interest to her for some time, in which defendants Snow, Woodruff, and Jackson participated, each paying one-third, this bill was filed to foreclose the land contract, by the complainant, acting in the capacity of administratrix of her husband's estate.    The complainant claims that the three defendants associated together and purchased said land through and in the name of Snow, and the main controversy in the case is whether this is so, thereby making them jointly and severally liable for an anticipated deficiency.    That the defendants had equal interests in the premises is beyond dispute, and that they combined to procure them through Snow, in whose name, for reasons and purposes of their own, not disclosed, they chose to have the contract made, is equally certain.    This they had a right to do, and unless Ferris had a right to understand that the contract was made on their behalf, and unless he had a right to look to them for its performance, they assumed no obligation as to him, either legal or equitable, through the act of Snow.    Upon the hearing in the circuit court, a decree was made that each of the defendants should be primarily liable for a third of the deficiency, and that Snow should be liable for all.    All parties have appealed, except Snow, against whom the bill was taken as confessed.

Upon a former hearing (124 Mich. 559, 83 N. W. 374), on demurrer, it was held that the bill as there framed did not allege a cause for relief, because it showed that the contract was under seal, and defendants Woodruff and Jackson were not named in it, and it contained no allegation of facts constituting a ratification of the contract by them.    The cause was remanded, with leave to amend, and the bill has been since amended by the insertion of

allegations supposed to charge a ratification by them of Snow's contract.

Aside from the question whether a contract under seal can be ratified by acts *in pais* or by one who is not mentioned in it, a ratification implies an undertaking by which it was attempted to bind the principal, to be ratified. The theory of ratification is that the principal adopts the action of his agent. No consent by C. to step into the place of A., who has assumed to make a contract with` B. on his own behalf, would establish privity of contract between B. and C., unless based upon a new consideration. It is different when A. assumes to contract with B. on behalf of C. In such case the contract is not changed in terms, but is vitalized by a ratification of the unauthorized act of the agent. Ratification cannot be in part, but must be of the whole contract. Story, Ag. § 250. The writing in this case is, upon its face, plainly one between Ferris and Snow, and no one else, and one which Snow could not make for Jackson and Woodruff, for want of written authority. Moreover, the evidence is clear that Snow did not represent to Ferris that he was making this contract on behalf of any one but himself. The only evidence upon the subject tending to show the contrary is that Woodruff took an interest in the title to be obtained, and said, in substance, that, "We don't want it with a defective title to the 20 acres," and, when Snow was asked why the contract, "did not mention Mr. Jackson and Mr. Woodruff," the witness says that Snow answered, "Because Mr. Ferris and Mr. Snow had been friends for a number of years, and Mr. Snow explained that it would be simpler to transact the business with one than with several." It does not appear when or where this talk occurred. If it was after the contract was made, as the language would indicate, it was too late to affect it; if before, it evinced Snow's indisposition to assert that he was making a contract on *behalf* of Jackson and Woodruff, although Ferris knew that the three were to own the land; and, manifestly, unless that is what the parties, Ferris and Snow, understood that

he was attempting, there was no contract which these men could ratify.

Let it be conceded that Ferris knew of the intention of Snow, Woodruff, and Jackson to procure title to this land through Snow. He also knew that they did not choose to make a contract with him in their own names, but did want one made between him and Snow. He consented to this. There was no fraud about it, and his own attorney drew the contract. Then, not only does the writing fail to show that the contract was intended to bind Jackson and Woodruff, but the testimony shows conclusively an intention that it should not, and an absence of any assumption by Snow to make a contract which should.

But it may be said that Jackson and Woodruff have admitted that they were bound by this contract, by the correspondence, and interviews and payments, since Ferris' death. We think this is not so. They did recognize that they were jointly interested in the land, and after Ferris' death each consented to pay one-third of the amount remaining due,—perhaps recognized an obligation to do so, moral or legal, or both. But we fail to find any testimony that indicates that either Jackson or Woodruff assented, or intended to assent, to the claim that he was personally bound to Ferris, by that contract, to pay the full purchase price of the land, or that it was intended to bind him in any way. Ferris did not suppose he was contracting with Woodruff and Jackson. He knew he was not. Hence there was no such contract for them to ratify. In 1 Am. & Eng. Enc. Law (2d Ed.), p. 1188, it is said:

"A ratification by a principal of the acts of an agent can only be effectual between the parties when the act was done *by the agent on account of the principal*, not on his own account, or on account of some third person. *Where one buys in his own name, for himself, another cannot adopt the transaction.*"

Many cases are cited in support of the text, among them *Hurley* v. *Watson*, 68 Mich. 531 (36 N. W. 726). It is

a significant fact that in most, if not all, of the cases of ratification, the person contracting has had reason to believe that the agent was assuming to act for another. In Mechem, Ag. § 124, the learned author indicates that "the act to be ratified must have been done by one claiming to represent the person ratifying;" and again, in section 127, he says: "The act ratified must also have been done by the *assumed* agent *as* agent." In *Mitchell* v. *Fire Ass'n*, 48 Minn. 284 (51 N. W. 608), it is said, "A ratification is only effectual when the act is done by a person *professedly acting as the agent* of the party sought to be charged,"—citing Ewell's Evans, Ag. p. 55; Story, Ag. § 251*a*. The latter authority states the rule thus:

"One other consideration is important to be borne in mind. It is that a ratification can only be effectual between the parties when the act is done by the agent *avowedly* for or on account of the principal. * * * This would seem to be an obvious deduction from the very nature of a ratification, which presupposes the act to be done for another," etc.

See *Wilson* v. *Tumman*, 6 Man. & G. 236.

In *Hamlin* v. *Sears*, 82 N. Y. 331, it is said, "The doctrine properly applies only to cases where one has assumed to act as agent for another." Fry, Spec. Perf. § 510; *Workman* v. *Wright*, 33 Ohio St. 405 (31 Am. Rep. 546); *Dempsey* v. *Chambers*, 154 Mass. 330 (28 N. E. 279, 13 L. R. A. 219, 26 Am. St. Rep. 249).

It follows that the decree must be reversed, and bill dismissed, with costs of both courts to defendants.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.