JAMES B. ALLEN *vs.* LISTON LUMBER COMPANY.

Middlesex.     December 5, 1932. — January 4, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Agency*, Existence of relation, Undisclosed principal, Ratification.

At the trial of an action of contract against a corporation for a balance due the plaintiff, a plumbing contractor, on a contract for the installation of plumbing, it appeared that the contract was in writing and was between the plaintiff and one whom he knew to be an agent of the defendant for some purposes and who signed in his individual name,

followed by the words, "Owner & Assignee"; that the defendant was not mentioned in the contract nor was there any mention of agency; that the plaintiff, when he made the contract, knew that the defendant was financing the building where the plumbing was being installed and that the agent held title to the building, but that he, the plaintiff, elected to have the contract with the agent as an individual. The plaintiff testified that, while the contract was with the agent as an individual and charges were on his books in that name, he sent bills to the defendant and the defendant's treasurer in substance told him that "as soon as we get" a certain suit settled "we will give you your money." The plaintiff contended that the defendant was an undisclosed principal and as such ratified the act of its agent in making the plumbing and heating contract. A verdict was ordered for the defendant. *Held*, that

(1) The plaintiff plainly having manifested an intention to rely solely upon the credit and responsibility of the agent individually in the transaction, a finding of ratification or adoption by the defendant of the agent's acts as binding was not warranted;

(2) The verdict rightly was ordered.

CONTRACT. Writ in the First District Court of Eastern Middlesex dated May 21, 1931.

On removal to the Superior Court, the action was tried before *Greenhalge*, J. It appeared that the contract in writing described in the opinion was between "J. B. Allen Co., Plumbing Contractor . . . Party of the first part" and "Ernest C. Whitney . . . Party of the second part"; that there was no mention in it of the defendant or of any agency relationship of Whitney; and that it was signed "Ernest C. Whitney, Owner & Assignee Party of second part."

Other material evidence is described in the opinion.

With leave reserved under G. L. (Ter. Ed.) c. 231, § 120, a verdict of $850 for the plaintiff was recorded. The judge then directed that a verdict be entered for the defendant. The plaintiff alleged exceptions.

*J. G. Bryer*, for the plaintiff.

*I. N. Samuels*, for the defendant.

CROSBY, J. This is an action of contract to recover a balance due on a contract for the installation of plumbing and heating in a dwelling house. The jury returned a verdict for the plaintiff in the sum of $850 and thereafter, in accordance with leave reserved, the judge directed the

entry of a verdict for the defendant, subject to the plaintiff's exception.

It is the contention of the plaintiff that the defendant was an undisclosed principal and as such ratified the act of its agent in making the plumbing and heating contract. In order to determine the relation of the parties it is necessary to recite the evidence upon which the plaintiff relies. He testified that he was in the heating and plumbing business and had installed the heating and plumbing in four houses in the summer and fall of 1928; that in connection with this work he met one Stead and, as a result of some talk or contract had with him, he started work under a separate contract for each house; that he met one Whitney often in connection with the transaction; that Whitney took care of the financing of the first three houses, and was employed by the defendant; that he later learned that Whitney had taken title to the houses; that Whitney told him he would straighten out the contract with the plaintiff and would make the contract with him, or would sign a contract with him; that he was approached by Whitney in connection with the work he was to do on the last house; that he met him in the office of the defendant, and one Liston, the treasurer of the defendant, was present, and also was present during some of his talks with Whitney; that Whitney wanted to know if he would do the work on the last house; that the plaintiff replied that he would, but knowing there had been more or less trouble he wanted some security on the house, and he stated to Whitney he would like a contract; that Whitney told him to prepare one and come to his office; that he drew a contract and took it to the office of the defendant and went into Whitney's office and the latter signed it; that it was dated November 16, 1928, and Liston, the defendant's treasurer, was not present at that time; that after the contract was signed the plaintiff proceeded with the work and later had some talk with Liston about the work on the last house; that after the house was finished he had talks with him at different times; that the treasurer talked about a law suit pending in Boston; that while the work was being per-

formed he talked with Liston at the defendant's office and asked him when his money for the last house would be forthcoming, and was told that "as soon as we get this settled we will give you your money"; that the contract on the last house was completed about the first of the previous December; that while he was doing the work on the house in question he had talks with Liston, most of them informal, but with reference to anything relating to business the treasurer referred the plaintiff to Whitney and said that the latter was handling that part of it; that when the work on the last house was completed he went to the defendant's office and asked for his money and saw both the treasurer and Whitney who went into a back room for some conference and a few minutes later Whitney handed him a check for $200 in the presence of the treasurer; that he was then claiming from the defendant the sum of $931.98 which included the amount due him on the last house of $760, and a balance of $171.98 previously due on an earlier contract; that the check covered this balance, and the remainder of the check was applied on the contract for the last house. The plaintiff further testified that he sent the defendant a bill in December, 1928, showing the amount due and thereafter had a talk with the treasurer who referred to the pending law suit and promised to pay him as soon as the suit was terminated; that after this talk the plaintiff made a request for payment "once each month and some time not so often," and when he had any talk with the treasurer about payment of the account he was referred to Whitney.

On cross-examination the plaintiff testified that Exhibit 3 (which was a bill for the work) was sent to the defendant; that the word "Agent" after the name Ernest C. Whitney was written in pencil by his bookkeeper; that he did not know when she wrote it; that the charge appears on his books against E. C. Whitney; that the word "Agent" does not appear on his books; that the last of his dealings with the Steads was on the first two houses, and that while he was doing work for them he received payments from the treasurer of the defendant at its office and some of them

were brought to him by Whitney; that they were all checks of the defendant's treasurer, and all were made payable to the Steads and indorsed to him; that he knew the Steads were getting into trouble, but he did not know that Whitney took title to help them out; that he knew they did not finish the houses, and that was the reason he made the last contract in Whitney's name; that he did not know previously to making the contract with Whitney that the Steads were the owners of the property, nor did he know it when he drew the contract with Whitney, and did not know that the property was transferred to Whitney because of trouble in finishing the house; that Whitney told him the property was in his name, and he would see that the plaintiff received his money; that he thought Whitney became the real owner when the property was transferred to him, the plaintiff thought as agent, because Whitney was in the employ of the treasurer of the defendant, and the plaintiff thought Whitney became the owner of the property absolutely. The plaintiff further testified that he understood this because the defendant was financing and Whitney was in the defendant's employ, and had been representing the company; that he dealt with Whitney through the transaction and sent all his bills to the defendant; that at the time the contract of November 16, 1928, was drawn he knew that the defendant was the assignee in some form of the property; that he elected to draw his contract with Whitney; that he did not have any talk with Liston respecting the contract of November 16, before he entered into it, but knew that the defendant had taken an assignment of the balance due on the construction loan at the time Whitney had taken a transfer of the property in his name, and he had been so informed and knew it before the contract of November 16 had been drawn by him; that Liston told him "that there was an injunction tying up the property, and that was the reason why no money was forthcoming; that the defendant told him that they furnished lumber on this house and he knew it"; that the treasurer of the defendant told him there was $4,000 or $5,000 due him from the financing company.

Liston, called as a witness by the plaintiff, testified that he had charge of the defendant's operations and work, and that Whitney was in the employ of the defendant, and was acting as a lumber salesman; that Whitney was in the office of the defendant every day and had a desk there.

Whitney, called as a witness by the plaintiff, testified that he was employed by the defendant selling lumber and negotiating mortgages; that he negotiated the sale of lots of land in connection with the Steads, and arranged with the treasurer of the defendant for construction mortgages, but took orders for lumber, and when payments became due on the construction loan he obtained payments from the construction mortgagee and delivered them to the treasurer and wrote out the checks for Liston to sign, and the latter distributed all the money that the Steads received on the construction loans from the mortgagee; that he would examine the property from time to time and report to the mortgagee whether the property had reached the stage of construction to entitle the Steads to a payment on the construction loan; that at some time he took title to the premises; that, at that time, or before that time, payments were assigned either to the treasurer or to the defendant itself, for protection of some of the defendant's bills on the property; that subsequently the mortgages were foreclosed and any equity that he had in the property was "wiped out" by the foreclosure sale; that he held the property as a straw for the benefit of all concerned; that all the checks on the construction loan were made out to the treasurer of the defendant and to the Steads.

The foregoing is a summary of all the material testimony. It is the contention of the plaintiff that the defendant ratified the act of its agent and employee, Whitney, in making the heating and plumbing contract with the plaintiff. The law applicable to cases of this kind is well settled. It was said in *Raymond* v. *Crown & Eagle Mills*, 2 Met. 319, 324: "The authorities are uniform in maintaining the doctrine, that when the principal is unknown to the vendor at the time of the sale, he may, upon discovering the principal, resort to him, or to the agent with

whom he dealt, at his election; and on the other hand, where the vendor, at the time of the sale, knows the principal and understands that the buyer is the mere agent of another, and elects to give credit to the agent, making him the debtor, he cannot afterwards resort to the principal." *Kingsley* v. *Davis*, 104 Mass. 178, 180. *Gavin* v. *Durden Coleman Lumber Co.* 229 Mass. 576, 579. *Maynard* v. *Fabyan*, 267 Mass. 312, 315. *Delano* v. *Goldstein, ante,* 188. It is necessary in order to prove a ratification that the act should have been done by one who was in fact acting as an agent, but it is not necessary that he should have been understood to be such by the party with whom he was dealing. *Sartwell* v. *Frost*, 122 Mass. 184. *Hayward* v. *Langmaid*, 181 Mass. 426, 429. "Ratification is limited to the adoption of an act purporting to be done, or in fact done, in behalf of the principal." *Hixon* v. *Starr*, 242 Mass. 371, 374. It was said in *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381, at page 382, that "The meaning of ratification is, and always has been, the adoption of an act purporting to be done, or, at least, done in fact, on behalf of the ratifier." If the agent did not intend to act as agent there is no agency, and there can be no ratification of the act of one not acting as agent.

Upon the entire evidence in the case at bar considered in the aspect most favorable to the plaintiff there is nothing upon which to base a finding that Whitney intended to act as agent for the defendant in his dealings with the plaintiff. In these circumstances there can be no ratification and the plaintiff cannot recover. On the other hand, if such an intention could be found to exist from the relation of the parties, the interest which the defendant had in the property, and the agency which existed between the defendant and Whitney for other purposes, and if the further facts would justify a finding of ratification, still the plaintiff must fail for the reason that he has plainly manifested an intention to rely solely upon the credit and responsibility of Whitney in this transaction. It appears from the plaintiff's testimony that after he had knowledge of the interest which the defendant had as assignee of the property on

November 16, 1928, he entered into a written contract with Whitney as principal for the doing of the work for which he now seeks to recover. It is manifest from the contract that the plaintiff did not intend that the defendant should be charged with liability. The testimony of the plaintiff clearly shows that at the time the contract was drawn by him he knew that the defendant was interested in the property, and, notwithstanding that fact, he elected to make his contract with Whitney. The case is governed by *Silver* v. *Jordan*, 136 Mass. 319, where it appeared that the plaintiff, with knowledge that the alleged defendant principal was interested in the transaction, elected to contract with the agent alone. It follows that the trial judge rightly directed a verdict for the defendant.

*Exceptions overruled.*