STATE OF MONTANA, ex rel. ARNOLD H. OLSEN, Attorney General of the State of Montana, Relator and Appellant, *v.* RAYMOND JOSEPH SUNDLING, Defendant and Respondent.

No. 9371.
Submitted January 17, 1955. Decided March 24, 1955.
281 Pac. (2d) 499.

598

Mr. Arnold H. Olsen, Atty. Gen., Mr. Emmet T. Walsh, Asst. Atty. Gen., Mr. H. M. Brickett, Asst. Atty Gen., for appellant.

Messrs. Fitzgerald, Ammerman & Bodine, Messrs. Gibson & Berg, Livingston, for respondent.

Mr. Walsh, Mr. David T. Fitzgerald and Mr. Ben E. Berg, Jr., argued orally.

MR. JUSTICE DAVIS:

Claim and delivery by the state (plaintiff and appellant) to recover the possession of a described road roller from one Sundling (defendant and respondent), who had purchased it for $3,-500 on September 18, 1954, from one Kallestad. Kallestad himself purchased from Walter R. Rankin, who was an employee of the state, or more specifically of its state park commission.

The complaint alleged right to possession, but not title in the state. Sundling admitted only the official capacity of the attorney general, the relator who brought the action; otherwise his answer was a general denial. By that answer no new matter was set up as a defense.

Consistent with the applicable statutes, R. C. M. 1947, sec. 93-4101, et seq., the state at the time of issuing summons claimed the delivery of the roller in dispute, and has possessed it since.

Trial was to a jury without objection interposed by the defendant to the sufficiency of the complaint, or to any evidence offered upon the ground that it was without foundation in the allegations of that complaint. Accordingly the pleading will be deemed amended to conform to the proof. Green v. City of Roundup, 117 Mont. 249, 254, 157 Pac. (2d) 1010; Fulton v.

Huggans, 112 Mont. 442, 444, 117 Pac. (2d) 273; Ellinghouse v. Ajax Livestock Co., 51 Mont. 275, 282, 152 Pac. 481, L. R. A. 1916D, 836; Lackman v. Simpson, 46 Mont. 518, 525, 129 Pac. 325; etc.

When the evidence for both parties was in each moved separately and without reservation for a directed verdict. Thereupon the trial judge took the case from the jury and granted the defendant's motion thus himself deciding all questions of fact as well as of law.

Judgment followed that the defendant Sundling was the "owner and entitled to the possession of said personal property," and that the plaintiff "deliver the immediate possession of said personal property" to him. There was no award of damages; nor was the value of the roller fixed.

From this judgment the state has appealed.

Because the action here is at law our review is limited to the inquiry whether there is substantial evidence to support the trial court's verdict on findings and judgment. If so, we must affirm. Granier v. Chagnon, 122 Mont. 327, 335, 203 Pac. (2d) 982; Teagarden v. Calkins, 55 Mont. 35, 173 Pac. 549.

In our view, however, there is none. Specifically, as we read the record, the evidence is without substantial conflict upon the controlling issue of the state's right to possession. As a matter of law we must therefore reverse with directions to enter judgment for the plaintiff.

The argument of the defendant's counsel to the contrary of this conclusion rests upon three points which are to be summarized as follows, viz.,

(1) That the state has shown neither title nor right to possession in itself.

(2) That if the state has proved a right to possession vested in it, then a valid sale is shown to Kallestad by Rankin, the director or acting director of state parks.

(3) That if the sale by Rankin was not in the first instance authorized by the state, it was subsequently ratified.

We shall discuss these contentions in the order of their statement.

First then that the state as plaintiff has shown neither title nor right to possession in itself. We agree at the outset that the state is not the absolute owner of the disputed road roller. But it need not be the holder of the legal title to prevail in this action. By its complaint the state alleges only that it "was and still is lawfully entitled to the possession * * *"; and, if sustained by the evidence, this is enough against anyone without a better title. Pearl v. Interstate Securities Co., 357 Mo. 160, 163, 164, 206 S. W. (2d) 975; Smith v. Barrick, 151 Ohio St. 201, 206, 85 N. E. (2d) 101, 8 A. L. R. (2d) 1087; Turner v. Pierson-Hollowell Walnut Co., 260 Ill. App. 158, 163, 164; McKinney v. Croan, 144 Tex. 9, 12, 13, 188 S. W. (2d) 144; Braden v. Cline, 51 Cal. App. 424, 426, 196 Pac. 913; Odd Fellows' Hall Ass'n v. McAllister, 153 Mass. 292, 294, 295, 26 N. E. 862, 11 L. R. A. 172; 77 C. J. S., Replevin, sec. 43, pages 30, 31, 32; 54 C. J., Replevin, sec. 47, pages 437, 438, 439; 46 Am. Jur., Replevin, sec. 23, pages 15, 16.

The record made at the trial upon this point is that sometime in June 1950 the State of Montana by its state park commission, R. C. M. 1947, sec. 62-301, et seq., before amendment by Chapter 178, Laws of 1953, came into possession of this roller, which had been theretofore allocated to Montana by the Federal Government as surplus property pursuant to the Federal Property and Administrative Services Act, 1949, Public Law 152, 81st Congress, First Session, 1949; 63 Stat., Part 1, pages 377, et seq. Here the competent evidence, which we consider, is before us without objection and without contradiction.

We find it immaterial here that the so-called Donable Property Division of the State Department of Public Instruction, which actually took this roller from the federal agency, did not acquire statutory recognition until 1953 and the enactment of Chapter 136, Laws of 1953. It is also immaterial whether at any time before that chapter became law in 1953 the Donable Property Division, or its employees Gleeson and Ernst could ac-

cept this roller for the state and thereby vest it with any title or right thereto.

We think the counsel for the defendant have misread our decision in In re Beck's Estate, 44 Mont. 561, 121 Pac. 784, 1057, and have overlooked the force of their own citation of 81 C. J. S., States, sec. 104, page 1076. But however that may be we gather from the uncontradicted evidence in the record and the admissions made in the defendant's brief that it is beyond dispute the roller here in issue was turned over to the State of Montana as surplus property by the Federal Government under the Act noted above, and ultimately was delivered to the state park commission, where it was left under the control and supervision of Walter R. Rankin, who was employed either as state park director, or in some like capacity.

It cannot be disputed also that the Montana state park commission under R. C. M. 1947, sec. 62-304, was authorized to accept this roller as a gift from any one, the United States included, to be used for any of the purposes of the Act which created it. Nor is it disputed, if it be material, that this roller thereafter was kept and used by the employees of the commission in furtherance of the purposes of the Act in question and of the commission's "jurisdiction, custody and control of all state parks", etc., as are its powers and duties prescribed by section 62-304, supra.

In these circumstances it requires something more than the argument that the Donable Property Division of the State Department of Public Instruction was not at the time recognized by statute to demonstrate that the roller about which this case turns was not lawfully accepted for the state by the state park commission and thereby acquired by the state with its consent and by the authority of its legislature. It is a novel construction indeed of our law which under any circumstances would deny the state the right to accept the gift of a roller to smooth the roads in a state park that undoubtedly could be donated to the state in fee under the statutes from which the commission draws its powers.

The undenied fact here is that the state did come into the

lawful possession, by its park commission, of this roller, with the consent of the United States, the owner, and remained thus lawfully possessed until ousted by Rankin's sale to Kallestad sometime in 1951. In other words the United States made Montana its bailee for the use of its park commission, which by statute was authorized certainly to accept this bailment for the state. This is enough. Compare Viers v. Webb, 76 Mont. 38, 42, 245 Pac. 257; Woods v. Latta, 35 Mont. 9, 20, 88 Pac. 402; R. C. M. 1947, sections 20-209, 20-203, 47-101; 8 C. J. S. Bailments, sec. 10, page 245; 6 C. J., Bailments, sec. 18, page 1101; 6 Am. Jur., Bailments, sec. 11, page 181, sec. 14, page 182.

The state as bailee then was lawfully in possession and is therefore lawfully entitled to that possession as against anyone with no better right. It may vindicate that possession accordingly, and to that end may maintain this action in claim and delivery (replevin at common law). This is the express holding of the citations first above.

Any suggestion of a rule to the contrary was disposed of by the late Mr. Justice Holmes in Odd Fellows' Hall Ass'n v. McAllister, supra, 153 Mass. at page 295, 26 N. E. at page 863, while sitting in Massachusetts more than sixty years ago: ''Whatever may have been the old law, * * * at the present day one who has possession of goods is entitled to keep them as against any one not having a better title, and therefore may maintain replevin for them, as he may trover.''

Hence to prevail in this action the defendant Sundling by his purchase from Kallestad must have got at least Montana's rights as the bailee of the United States; i. e., Sundling by his purchase from Rankin through Kallestad must have acquired the right which the state had to possess and use this roller for its own benefit. The question now is then: Did Rankin have authority to sell the state's interest?

Here we meet the defendant's second point. For him it is argued that Rankin as director of state parks was authorized by statute to make this sale. No other authority or title is suggested. Our inquiry then is limited to an examination of

our Codes and session laws to determine precisely what authority Rankin had as such director or acting director, a title which he apparently acquired from the governor or the state board of examiners, or both, upon the recommendation of the state forester, who by statute, R. C. M. 1947, sec. 62-313, was at the time legally the state park director himself.

It would seem at this point and without further discussion that there could not be two occupants of the same office at the same time; that accordingly Rankin's appointment was void whether as director or acting director, because when made the office was already lawfully filled by another; and that he was therefore without authority of any kind to act for the state or in its name, much less to sell its property. Thus our inquiry on this branch of the case might well end.

But counsel for Sundling have argued so earnestly that Rankin was an agent or employee of the state or of its park commission vested with authority as such to act for the state that we shall assume as much, and specifically that he was hired by the state park commission pursuant to the power given it by the last sentence of R. C. M. 1947, sec. 62-303 (before repeal in 1953), as an employee having the control and supervision of all property held by the state park commission.

From this premise it is urged upon us first that because this roller had been turned over to the commission for its use, it was thereby "placed at the disposal" of the commission within the meaning of R. C. M. 1947, sec. 82-1912. Then this statute is interpreted to mean that the roller might lawfully be sold by Rankin, because it was state property held by the commission under his control and supervision, and therefore, as counsel would have it, "at the disposal" of Rankin, the commission's employee.

The argument to this conclusion proves too much, to say nothing of the ridiculous consequences to which it would point, if we were to give it effect.

It is vulnerable on the record, because it does not appear there that if the commission had under the statute any such authority as is claimed, there was any delegation of that authority to Ran-

kin. To say that the commission might lawfully dispose of this road roller perforce of section 82-1912, supra, is not to prove that Rankin, its employee, had that power in the absence of evidence that this authority had been expressly delegated to him. There is no such evidence before us.

In point of law, however, the commission itself as well as Rankin under the statute cited was without authority to sell this roller, R. C. M. 1947, sec. 82-1914; and none of the defendant's citations suggest the contrary, or attempt to define (as do his counsel) the phrase "placed at the disposal of", which is found in section 82-1912, supra. All these citations concern themselves alone with the verb "dispose". At bar we are met, however, with the noun "disposal", a different word of varied meaning, commonly used in more than one sense.

One primary and well recognized definition is "the right to control, manage, use, and govern." 27 C. J. S., Disposal, page 345; Matter of Surrogate of Cayuga County, 46 Hun. 657, 659 (construing "and at their disposal"); First National Bank of Anadarko v. Mills, 134 Okl. 186, 189, 272 Pac. 840, 843 ("disposal" means " 'to exercise control over' "); Koerner v. Wilkinson, 96 Mo. App. 510, 516, 517, 70 S. W. 509. Compare Crooke v. County of Kings, 97 N. Y. 421, 442, 443.

In Webster's New International Dictionary, 2d Ed., we find these definitions for "disposal":

"1. Act of disposing, or disposing of; specif:. a Arrangement; orderly distribution; as, the *disposal* of troops. b Regulation of the fate, condition, application, etc., of anything; administration; dispensation; as, divine *disposal.* * * * 2. Power or authority to dispose of; command; control;—esp. in the phrase *at the disposal of.* * * *

"Syn.—* * * my books are at your disposal (to use as you see fit); * * *".

To the same effect see Funk & Wagnall's New Standard Dictionary, "disposal".

Consistent with these definitions and with R. C. M. 1947, sec. 19-102, we conclude that section 82-1912, supra, is a statute

designed to secure an inventory for the information of the state purchasing department of the personal property of the state from time to time put under the control of its various agencies, that this statute confers no authority to sell upon anyone, and that read in their context the words "all other personal property thereafter placed at the disposal of any such state department" mean "all other personal property thereafter placed under the control of any such state department", and nothing more. Any other construction, such as that for which Sundling's counsel contend, would lead to the most absurd consequences; for example, that the highway patrol supervisor would be authorized to sell overnight and at his own price all the automobiles of the highway patrol, because as was Rankin's judgment in selling this roller the patrol supervisor held to the view that adequate transportation for highway patrolmen could be furnished by the various commercial bus lines operating in the state. The one case is no more extreme than the other. Neither case should be possible under the applicable statute. Nor shall we adopt any such unreasonable construction.

It follows that neither the park commission nor Rankin, its ▮ employee, was authorized to sell to Kallestad, that accordingly Kallestad by that sale took no title or right from the state, and that therefore he passed none of the state's rights to Sundling. The second point made by his counsel is without merit.

Finally, Sundling's counsel argue that although Rankin may have had no authority to sell, the state has nevertheless ratified the sale he made, because its attorney general has sued him in the district court for Flathead County where he has demanded that Rankin account "for the disposal of the said Roller" as well as for "all the proceeds and profits from the sale". We shall assume without deciding the point that evidence tending to show the state has ratified what Rankin did is admissible under the pleadings. We shall assume also without deciding the question that in a proper case the attorney general by his suit against Rankin could ratify the unauthorized sale to Kallestad.

Even so, no case is made here for the application of the doctrine of ratification under any circumstances.

For ratification does not result from the affirmance by the alleged principal of a transaction had by the alleged agent with a third person, unless in the transaction the supposed agent purported to act on the account of the reputed principal. We have found no case in this court which is decisive of this rule in Montana, but the overwhelming weight of authority elsewhere accords. Mechem on Agency (2d Ed.), Vol. 1, 260, 280, 281, 282, 283, 365, 366, sections 347, 386, 387, 504; Restatement of the Law of Agency, Vol. I, sec. 85, page 204; Valaske v. Wirtz, 6 Cir., 106 F. (2d) 450, 451, 124 A. L. R. 889; Puget Sound Lumber Co. v. Krug, 89 Cal. 237, 243, 26 Pac. 902; McDonald v. McCoy, 121 Cal. 55, 63, 64, 53 Pac. 421; Schomaker v. Petersen, 103 Cal. App. 558, 570, 285 Pac. 342; Blackwell v. Kercheval, 29 Idaho 473, 481, 482, 160 Pac. 741; Knapp v. Baldwin, 213 Iowa 24, 30, 238 N. W. 542; Ferris v. Snow, 130 Mich. 254, 257, 258, 90 N. W. 850; Mitchell v. Minnesota Fire Ass'n, 48 Minn. 278, 284, 285, 51 N. W. 608; Harrah v. Specialty Shops, Inc., 67 Nev. 493, 495, 496, 221 Pac. (2d) 398; Madill State Bank v. Weaver, 56 Okl. 183, 187, 154 Pac. 478; Minder & Jorgenson Land Co. v. Brusten, 26 S. D. 38, 39, 40, 127 N. W. 546; Pair v. Caraway Drilling Co., Tex. Civ. App., 250 S. W. (2d) 292, 294, 295; Northwest Poultry & Dairy Products Co. v. A. C. Fry Co., 27 Wash. (2d) 35, 54, 176 Pac. (2d) 324; Annotation 124 A. L. R. at page 893 et seq.; 2 C. J. S., Agency, sec. 41, a, b, pages 1078, 1079, 1080; 2 C. J. Agency, sec. 91, pages 474, 475; 2 Am. Jur., Agency, sec. 222, page 177.

Opposed to these authorities stand perhaps Massachusetts, Allen v. Liston Lumber Co., 281 Mass. 440, 446, 183 N. E. 747, and Alabama, Brooks v. Cook, 141 Ala. 499, 502, 504, 38 So. 641. If so, we decline to follow them.

At bar Rankin made the sale of this roller in his own name as principal by his own agent, Given Rankin, whose acts he himself ratified by accepting, endorsing and depositing Kallestad's check for the agreed price of $1,310 to his own account with the

Commercial National Bank of Bozeman. What he did afterward with the moneys in that account has no bearing at all upon the sale to Kallestad.

The written memorandum of that sale, dated September 18, 1951, which Kallestad took and the check of that date which he gave, both of which are before us without objection, establish beyond dispute that Rankin neither sold nor purported to sell this roller in the name of the state, or for the state as principal by himself as agent, that he did not take nor did he purport to take the price paid by Kallestad for the state as principal or by himself as its agent. The record without exception otherwise accords with this conclusion.

Kallestad himself testified to the circumstances surrounding his purchase:

"* * * the ownership was not discussed as far as I remember. I asked him if it was a sale. He said it was. I made a deal to buy it with payment later."

Counsel for Sundling in their briefs have pointed us to excerpts from the testimony, which sustain, as they argue, the contrary view. We do not agree, even if we were to concede, as we do not, that parol evidence here can overcome the force of the writings which passed between the parties at the time. In the testimony of Kallestad, for example, upon which reliance is had, there is no evidence of a sale in the name of the state by Rankin, the agent. Specifically, it is not competent or substantial evidence of the fact in issue that Kallestad felt "Mr. Rankin had authority to sell this equipment", or that he "figured it [certain equipment] belonged to the Park Service", but that he "thought he [Rankin] had control of it", or that he (Kallestad) bought from Rankin and paid him the price because he "thought" Rankin "had the right to sell it", and "thought" he was making a "bona fide purchase of something from a state official", etc.

These thoughts and feelings which Kallestad entertained are inadmissible as evidence of any kind. They in no measure detract from the force of the writings before us. They should have

been excluded from the record as immaterial and from the consideration of the trial judge as without substance.

But if Kallestad's beliefs, thoughts and feelings are to play any part in the determination of this controversy, it is noted that he was equally agreeable to the belief or impression held at the time of the sale that Rankin and his wife "were the owners of that ten ton roller", that "Walter R. Rankin was the owner of that property", that it was not discussed whether "he [Rankin] was selling it for the State of Montana".

Certainly one belief is here neutralized by a contrary feeling, a thought one way by an impression the other. And either way we have no evidence upon which to base a finding of any fact in issue.

Rankin's testimony, which is also quoted in the briefs, sustains rather than contradicts the written evidence to the point that Rankin did not make the sale as the state's agent or in its name, but to the contrary as a principal beholden to no one other than himself for what he did or for the price which he received. Questioned, his every answer was in substance, "I sold that roller". Not once in words or in substance did Rankin testify that either the state or the park commission made the disputed sale, that he ever told Kallestad the state was selling by him as its director of state parks, or that in his dealings with Kallestad he represented the state as the seller and owner, himself as its agent.

Again we suggest that Rankin's "sense of responsibility", his "tremendous interest", his "feeling" that he was justified in selling, his "assumption" that he "had some authority", etc., do not constitute evidence of any kind that he sold for a principal as an agent whose unauthorized sale accordingly could be ratified. That sale could not be ratified on this record within the rule to which we have given our adherence above.

There is no competent evidence of the value of the roller in ▇ issue or of damages sustained by the defendant's withholding. But in the circumstances of this case this is not important. Compare Hayes v. Moffatt, 83 Mont. 185, 193, 271 Pac. 452.

Accordingly we reverse the judgment of the district court with directions to enter judgment for the state that it is entitled to the immediate possession of the described chattel, but without fixing its value and without damages for its detention, or otherwise.

MR. CHIEF JUSTICE ADAIR and MR. JUSTICES ANGSTMAN, ANDERSON, and BOTTOMLY concur.